WHITE, POTTER & PAIGE MANUF'G Co. and others *v.* HENRY B. PETTES
                    IMPORTING Co. and others.

*(Circuit Court, E. D. Missouri, E. D.   May 20, 1887.)*

1. CORPORATIONS—SALE OF ATTACHED ASSETS—LIABILITY OF DIRECTORS.
    Where an insolvent corporation is still "a going concern," the directors
    cannot be held personally liable, as for a breach of trust, because they have
    made a *bona fide* advantageous sale out and out of the corporate assets, all of
    which have been attached, to one of the attaching creditors, on condition that
    he would cancel his own debt, and discharge the debts of the other attaching
    creditors; the directors having no means with which to contest the attach-
    ment suits, and the transfer being advised by counsel.

2. SAME—ATTACHMENT.
    The assets of such insolvent corporation cannot be followed by its cred-
    itors as a trust fund in the hands of the attaching creditor.

3. SAME—RIGHTS OF CREDITORS.
    A creditor of an insolvent corporation will not be deprived of a lien ob-
    tained by him upon its assets by an attachment because at the time the writ
    was issued he knew that the corporation was insolvent.

In Equity.
*M. W. Huff,* for complainants.
*Boyle, Adams & McKeighan,* for defendants.

THAYER, J.   From the averments of the bill, which have been sus-
tained by the proof, it appears that the "Henry B. Pettes Importing
Company," a Missouri business corporation, in February, 1886, and for
some months prior thereto, was insolvent, but was still engaged in the
prosecution of its ordinary business.   It had had large dealings with the
Provident Savings Bank, and owed the bank notes to the amount of
$28,000.   As partial security for such debt, the bank held certain per-
sonal property in pledge of the estimated value of about $10,000.   The
importing company also owed other persons, including the complain-
ants, considerable sums of money for goods purchased.   In February,
1886, one of the creditors of the importing company sued out an attach-
ment against it, and caused it to be levied on certain property of the cor-
poration.   Thereupon the Provident Savings Bank also sued out an at-
tachment in the sum of $18,000, and caused the same to be levied.   Six
other attachment suits immediately followed.   By virtue of the various
writs of attachment (which together amounted to $31,373) all of the
property of the importing company then in its possession was seized.
    It is admitted that the directors of the importing company had no
means of their own to employ counsel to defend against the attachment
suits, and that they conferred with counsel on the subject of defending
the suits, (to the extent, at least, of procuring a dissolution of the attach-
ment liens,) and were advised that it was doubtful whether a dissolution
of the attachments could be effected by making a defense.   It is further-
more admitted that the board of directors were advised by counsel that
in view of the difficulties in the way of defending the suits, and in view
of the fact that the attached property would probably be sold at great

loss and expense by a judicial order pending the litigation, that it would be better to propose to the Provident Savings Bank to take the attached property by an absolute conveyance, on condition that it would cancel its own debt and discharge the debts of the other attaching creditors. Such proposition was accordingly made to the bank and was accepted. The bank subsequently carried out the arrangement, and received as the net proceeds of the sale of the attached property the sum of $17,306.06. There is no doubt that the importing company received more for the property than its actual value, inasmuch as debts of the company to the extent of $31,373 were canceled by the transaction. The prayer of the bill is in substance that the court will decree that the importing company had become dissolved within the meaning of the Missouri statutes prior to the levy of said writs of attachment; that the funds realized by the Provident Savings Bank from the sale of the attached property be declared a trust fund for the benefit of creditors of the importing company; and that the directors of the company be held as trustees of the assets which were attached and subsequently transferred to the bank. In other words, this bill proceeds upon the theory that the insolvency of the corporation prior to the suits in attachment operated as a dissolution of the company; that the directors of the company, by virtue of its insolvency, lost their ordinary power of control over the affairs of the corporation, and became technically trustees of its assets, holding the same for the benefit of all the creditors. Complainants accordingly seek to follow the trust fund into the hands of those who have received the same, and compel them to account, and at the same time they seek to charge the directors as for a breach of trust.

One fallacy that underlies the theory of the bill consists in the assumption that the insolvency of a corporation will of itself operate to dissolve the body and make the directors mere trustees of its assets. Such is not the law. The insolvency of a corporation, suspension of business, and failure to hold corporate meetings, has in many cases been held to create a practical dissolution for the purpose of rendering certain statutory remedies against shareholders available; but ordinarily mere insolvency does not impair the powers of a corporation. So long as a corporation remains "a going concern"- that is to say, continues to transact its ordinary business—the corporate life continues, and the power of its directors is unaltered, even though the corporation is embarrassed or even insolvent. There is this limitation, however, upon the power of the directors of an insolvent corporation, which has been recognized in a great many cases, and rests upon solid ground, namely, that directors cannot declare preferences in favor of themselves if they are creditors of the corporation when the insolvency of the company has been ascertained, and a suspension of business is imminent. Mor. Corp. § 579; *Lippincott* v. *Shaw Carriage Co.*, 25 Fed. Rep. 577, and cases cited.

The limitation in question rests upon the fact that directors occupy a fiduciary position, and should not be permitted to profit thereby to the detriment of other corporate creditors. Possibly the principle might well be extended so as to prohibit the directors of a corporation from

granting preferences to third parties when the corporation is confessedly insolvent and is unable to extricate itself from financial difficulties. Strong reason no doubt exists for regarding the directors of a corporation from such time forth merely as trustees of the corporate assets for the benefit of all the creditors, and as accountable for the proper administration of the same like other trustees of a trust fund. *Marr* v. *Bank*, 4 Cold. 471; *Williams* v. *Jones*, 23 Mo. App. 143, and cases cited. But, conceding this to be so, it by no means follows that relief can be granted in the present case. When the attachments were levied in this case the corporation was transacting its ordinary business, and making an earnest effort to relieve itself from financial embarrassment. The attachments took the property of the corporation out of the custody of its officers. The directors had confessedly no means to prosecute litigation to effect a discharge of the attachment liens, and were advised that such attempt would likely prove unsuccessful, and would certainly lead to a great sacrifice of the corporate property. Under these circumstances, and not with any view of declaring a preference, the directors gave their consent to an arrangement whereby the corporate property was preserved from sacrifice, and made to pay as much as possible of the corporate debt. Certainly there is no ground for holding the directors individually responsible to these complainants for the value of the attached property, as for a breach of trust, considering the circumstances under which they were compelled to act, and the motives that prompted their conduct. And in my judgment there is no greater reason for holding the Provident Savings Bank accountable to these complainants for the proceeds of the corporate property or a portion thereof.

When the attachments were levied the importing company was not a dissolved corporation, within the purview of the Missouri statutes. It was "a going concern," and had not abandoned its franchise. That it was insolvent admits of no doubt, but that fact was not sufficient to preclude corporate creditors from resorting to the ordinary legal remedies for the enforcement of their demands. If the directors of the importing company had defended against the attachments on the ground that the corporation had become dissolved within the meaning of the Missouri statutes, and that the corporate assets by reason of such dissolution could not be attached in a strictly legal proceeding, the defense in my judgment could not have been maintained on the proof contained in this record. It has never been held under any local statute, so far as I am aware, that the mere insolvency of a corporation prevents a creditor who is aware of such insolvency from obtaining a valid lien upon its property by virtue of a writ of attachment, and such is not the general rule of law in the absence of an express statute. I accordingly conclude that the attaching creditors including the bank are entitled to the fruits of their superior diligence. The bill is therefore dismissed.