PEOPLE v. KUNZ.

(Supreme Court, General Term, Second Department.    March 6, 1894.)

RAPE—UNCORROBORATED TESTIMONY OF PROSECUTRIX.
A conviction of rape will be reversed where it is had on the uncorroborated testimony of the prosecutrix.

Appeal from court of sessions, Queens county.

Frederick Kunz was convicted of rape, and appeals.    Reversed.

Argued before BROWN, P. J., and DYKMAN and PRATT, JJ.

Thornton, Earle & Kiendl, for appellant.
Daniel Noble, Dist. Atty., for the People.

PER CURIAM.    A careful examination of the evidence in this case has failed to disclose any testimony corroborative of the complainant's story.    The conviction rests upon her testimony, uncorroborated by other evidence.    The judgment must be reversed, and a new trial had.

---

(7 Misc. Rep. 352.)

OELBERMANN v. NEW YORK & N. R. CO. et al.

(Supreme Court, Special Term, New York County.    February, 1894.)

1. CORPORATIONS—ULTRA VIRES.
Though the purchase by a corporation of stock in another corporation is ultra vires, the objection cannot be raised by the stockholders of the company whose stock is so purchased.

2. SAME—ACTIONS AGAINST—INJUNCTION.
The mere fact that a stockholder, who is also a creditor of the corporation, desires it to fail, is not a ground for enjoining the creditors from suing to enforce their debts.

3. SAME—RIGHT OF STOCKHOLDER TO PURCHASE BONDS.
A stockholder, whether an individual or another corporation, may purchase the bonds of the corporation.

Action by Emil Oelbermann against the New York & Northern Railroad Company and others for an injunction.    Defendants demur to the complaint on the ground that it does not state facts sufficient to constitute a cause of action.    Sustained.

Simon Stern, for plaintiff.
Ashbel Green and Thomas Thacher, for defendants New York Cent. & H. R. R. Co. and Drexel, Morgan & Co.
Sherman Evarts, for defendant New York & Northern R. Co.

INGRAHAM, J.    The complaint in this action is quite voluminous, and contains many allegations of the motives and the intention of the defendants the New York Central Railroad Company and Drexel, Morgan & Co., stated to be reprehensible, but I am unable to see that any fact is alleged that would entitle the plaintiff to any of the relief demanded.    The action is brought to restrain the defendant the New York Central Railroad Company from voting upon certain stock owned by it, at the election of officers of the New York & Northern Railroad Company, and restraining the Farmers' Loan

& Trust Company, as trustee under a certain mortgage, from foreclosing that mortgage; and the complaint asks for a receiver for the New York & Northern Railroad Company, and for other and further relief. There is no allegation that any of the defendants to the action have acquired any interest in the property of the New York & Northern Railroad Company, except so far as it is alleged they are stockholders or the holders of bonds of the said company, and the action, therefore, cannot, upon the allegations contained in the complaint, be turned into an action to recover an interest in the property of the New York & Northern Railroad Company that had been acquired by any of the defendants. What has to be now determined is whether or not the plaintiff is entitled to any relief, conceding the facts alleged in the complaint to be true. The plaintiff apparently lays great stress upon the allegation that the act of the officers of the New York Central Railroad Company in purchasing the stock of the New York & Northern Railroad Company was ultra vires, and hence void; but I do not see, conceding that to be true, how that can give the plaintiff the right to any relief in this action. When the New York Central Railroad Company purchased that stock from its holders, and paid its money for the stock, the former holders of the stock parted with their title thereto. The only persons who could object to that transaction were the stockholders of the Central Railroad Company, or the people of the state. The plaintiffs, as stockholders of the New York & Northern Railroad Company, had no interest that would entitle them to object to the right of the New York Central Railroad to invest its money in the stock of another corporation; and as to all the world, except those interested in the New York Central Railroad, or the people of the state, the title to the stock purchased by the New York Central Railroad Company vested in it.

The complaint alleges that the default in the payment of the coupons upon the bonds of the New York & Northern Railroad Company occurred on June 1, 1892, though, by the terms of the mortgage, the default did not become operative until one year from that date, and it was competent for the said railroad company, at any time within said period of one year, to pay said coupons, and be relieved from said default. There is no allegation, however, that the said New York & Northern Railroad Company, at any time within that year, had the money necessary to pay said coupons. It is suggested that the stockholders might and would have by an assessment on their shares of stock, provided the necessary funds to meet said interest charges; but it is not alleged, nor does it appear, that the said New York & Northern Railroad Company had the power to assess its stockholders, or any right to compel the stockholders to pay that amount. It appears that on January 28, 1893, the defendant J. Pierrepont Morgan, a member of the firm of Drexel, Morgan & Co., purchased the majority of the stock and of the second mortgage bonds of the New York & Northern Railroad Company, and the said Morgan, being then the holder and owner of said securities, on or about the 18th of March, 1893, sold the same to the New York Cen-

tral Railroad Company; and, so far as appears, this was the first time that the Central Railroad Company became the owner of any of the stock or bonds of the New York & Northern Railroad Company. No fact is alleged to show that the New York Central Railroad Company did any act that prevented the New York & Northern Railroad Company from paying its past due interest, except that it refused to advance the money out of its own pocket to pay such interest, and the allegation that the majority of the stockholders had a purpose to get the property of the New York & Northern Railroad Company does not give a right of action. Some unlawful act of the majority stockholder must be alleged that is either actually accomplished or is contemplated to accomplish that purpose. It is a novel proposition that a bondholder of a railroad company, who is also a stockholder, cannot insist upon the payment of his bonds because he also owns the stock of the company, but is bound, not only to forego his right to collect the amount due him, but he is also obliged to contribute to pay interest on other bonds held by the company, when the company is unable to meet its obligations.

The complaint further alleges that, having acquired the securities mentioned, the New York Central Railroad offered to lease the property, franchises, and privileges of the New York & Northern Railroad Company, and voted upon the stock held by it in favor of such lease. The other stockholders, including the plaintiff, objected to such lease, and in consequence of their objection the same was not consummated. The subsequent allegation that the New York Central Railroad Company purchased additional bonds of the New York & Northern Railroad Company, and subsequently requested the trustee, or procured Drexel, Morgan & Co. to request the trustee, to foreclose the mortgage to secure the payment of such bonds, gives to the plaintiff no cause of action, as that act was not unlawful. The New York & Northern Railroad Company, so far as appears, had no money to pay its coupons, and the holders of the bonds had the right to require the trustees to foreclose the mortgage upon the failure of the railroad company to pay the interest on the bonds. Nor is any fact alleged that would justify the court in enjoining the trustee from prosecuting such foreclosure suit, or preventing the holders of the bonds from obtaining the relief to which they were entitled.

The complaint alleges that two of the stockholders of the New York & Northern Railroad Company, who were opposed to the foreclosure of the mortgage,—one of such stockholders being one of the plaintiffs in this action,—were made parties to that foreclosure proceeding, and interposed a defense to that action. Nothing appears to show why all of the plaintiffs in this action could not have been made parties to the foreclosure suit, and could not have obtained all the relief demanded in this action, except the injunction restraining the New York Central Railroad Company from voting on the stock held by it in that foreclosure suit. I have carefully examined the complaint to see if there is a single allegation of any act,

either of the New York Central Railroad Company, or of Drexel, Morgan & Co., or J. Pierrepont Morgan, or the Farmers' Loan & Trust Company, that was illegal, or that they had not a legal right to do, and I fail to find any such act alleged. The allegations of the intention of the parties, and of their conspiring together to carry out what is characterized as the inequitable, unlawful, and fraudulent purposes thereinbefore set forth, give no cause of action, unless the acts which are alleged as having been performed or contemplated were unlawful or illegal, and no such acts are alleged. The Central Railroad Company has purchased the stock, and owns it, and it has a right to vote upon the stock held by it, no matter what its intention in voting is, as long as its vote does not injure the minority of stockholders. It had a right to purchase the bonds of the New York & Northern Railroad Company, and, when the bonds became due, to enforce the right of a bondholder, secured to it under the provisions of the bond and mortgage given to secure the bond; and whether or not the action to foreclose the mortgage was properly brought was to be determined in the foreclosure suit, and not in an independent action. It would answer no good purpose to notice each point made by the counsel for the plaintiff, in his brief submitted, in favor of sustaining the complaint in this action. Most of the propositions of law there stated do not apply, for, as before stated, it is the acts, either performed or contemplated, which give a cause of action, and not the motives or intent that move a defendant to perform the acts. Assuming that the majority stockholders of a corporation owe to the corporation and the minority stockholders a duty to protect the property of the corporation, and that there exists a trust or quasi trust relation between the majority and minority holders of the corporate stock, a court of equity cannot interfere until such a majority stockholder does some overt act that is a violation of the duty that it owes to the minority stockholder. The mere fact that the majority stockholder wishes or hopes that the corporation will fail or be unable to pay its debts is no reason why a court of equity should enjoin the creditors from collecting their debt, even though the majority stockholder is also a creditor. Nor is there any principle which entitles a minority stockholder to compel the majority stockholder to pay the debts of a corporation, when the corporation itself is insolvent, and unable to pay its debts. As before stated, the complaint alleges no overt act, either performed or contemplated, by any of the defendants, which violates any right of this plaintiff; and, as no illegal act has been done or contemplated, the plaintiff shows no cause of action for an injunction. The plaintiff, however, claims to be entitled to judgment declaring that the Central Railroad Company acquired the second mortgage bonds, and any benefits to be derived from them, as trustee for all the stockholders. But, as before stated, there is no principle that prevents a stockholder from purchasing the obligation of a company whose stock he owns; and assuming that the plaintiff would be, under any circumstances, entitled to a judgment declaring that he is entitled to the benefit of the purchase

by the Central Railroad Company of the second mortgage bond, he must elect to adopt such purchase, and offer to contribute his proportion or share of the money paid therefor. The complaint contains no such allegations, nor is it alleged in the complaint that the New York Central Railroad Company has acquired any advantage or benefit from the purchase of the bonds in question. I think it clear, therefore, that no cause of action is alleged in the complaint; and the demurrer must be sustained, with costs, with leave to the plaintiff to amend within 20 days, on the payment of costs.