That would be imposing upon it a burden which it should not bear. It is altogether reasonable that the plaintiffs should furnish to the defendant the name of the agent who made the alleged sales in violation of the plaintiffs' contract, the place at which they were made, and the name of each person to whom an alleged improper sale is claimed to have been made. Such particulars will be sufficient to enable the defendant to prepare for trial, but, further than that, on this branch of the motion, plaintiffs should not be required to disclose their evidence, nor make any further statement now with reference thereto.

On the other branch of the motion, namely, that relating to the particulars of the damage sustained by the plaintiff, we think the motion should also have been granted. The allegation that by reason of the violation of the contract by the defendant the plaintiffs have been prevented from selling the vehicles bought by them is in the nature of special damage, and under such circumstances a bill of particulars of the damage is generally allowed. Isaac v. Wilisch, 69 Hun, 339, 23 N. Y. Supp. 589; Kraft v. Dingee, 38 Hun, 345; Justum v. Stone-Masons' Union, 78 Hun, 503, 29 N. Y. Supp. 621.

The order denying the motion for a bill of particulars is reversed, and the motion granted to the extent above indicated, with $10 costs and disbursements, with leave to the plaintiffs to serve an additional bill of particulars as to the violation by the defendant of the contract at any time within 10 days of the trial. All concur.

---

(14 Misc. Rep. 131.)

OELBERMANN et al. v. NEW YORK & N. RY. CO. et al.

(Supreme Court, Special Term, New York County. October, 1895.)

1. CORPORATIONS—RIGHTS OF MINORITY STOCKHOLDERS—LIMITATIONS OF.

The duty which the holder of a majority of the stock of a corporation owes to the minority stockholders does not permit him to use the power thus given him in the promotion of acts by its officers which are contrary to the interests of the corporation, and which are prompted by an ulterior purpose of personal advantage detrimental to his costockholders, but it does not prevent him from enforcing his rightful claims against the corporation, nor from acquiring and enforcing its obligations; and, generally, so long as there is no misconduct on the part of the directors or trustees amounting to a breach of trust, minority stockholders have no legal ground of complaint.

2. SAME—ACTION FOR INJUNCTION—SUFFICIENCY OF COMPLAINT.

A complaint in behalf of minority stockholders, to justify the intervention of a court in the management of a corporation, must state facts constituting mismanagement resulting in wrong or damage to the plaintiffs; and mere charges of evil intent, conspiracy, and fraudulent purpose are insufficient.

3. SAME—PLEADING CONCLUSIONS.

Statements in a complaint that, through the influence of the holder of a majority of the stock of a corporation, its income has been diverted from the payment of its obligations, and its managing officers have refused to accept business or to enter into profitable contracts, without stating facts showing such action to have been illegal or fraudulent, are mere conclusions.

4. PLEADING—COMPLAINT—WHAT ARE ISSUABLE FACTS.

Where the misconduct of others is relied on to constitute a cause of action, or it grows out of equities existing in plaintiff's favor, the facts which disclose the misconduct, or out of which the equities arise, become the ultimate facts to be pleaded.

Action by Emil Oelbermann and others against the New York & Northern Railway Company and others. Defendants demurred to the complaint. Sustained.

Simon Sterne, for plaintiffs.

Frank Loomis and Ashbel Green, for defendants.

BEEKMAN, J. The complaint in this action was demurred to for insufficiency, and the demurrer was sustained by Mr. Justice Ingraham at special term, who granted the plaintiffs leave to plead over. 27 N. Y. Supp. 945. An amended complaint was accordingly served, to which the defendants have also demurred on the ground, among others, that it does not state facts sufficient to constitute a cause of action, and the issue thus raised is now before me for determination. The amended complaint is very voluminous, and contains much of an introductory character that seems to be redundant. The gravamen of the complaint is that the defendant the New York Central & Hudson River Railroad Company, and those interested in promoting its designs, secured such control over the affairs of the New York & Northern Railway Company as to prevent the earning by the latter of sufficient money with which to meet the interest charges on its second mortgage bonds, by reason of which a foreclosure of the mortgage has been instituted, and a sale of the property of the company threatened, which will destroy the interests of the stockholders. The motive alleged is the advantage to the Central Company of possessing itself of the property and franchises of a competing road, and the means employed to make the plan successful is stated to be the acquisition by the Central Company of a majority of the second mortgage bonds and of the stock of the New York & Northern Railway Company, through which the directors of the corporation could be and were used to further the plan of purchasing the property at a foreclosure sale, or of otherwise acquiring exclusive control of it for the benefit of the Central Company. The complaint asks, among other things, for injunctive relief against further proceedings in the foreclosure suit. Before entering upon a discussion of the case, it will be well to note the fact that the question which has been raised respecting the power of the Central Company to purchase and vote upon the stock of the other company is removed from my consideration, inasmuch as its power to do so has been settled in the affirmative by the general term of this court on appeal from an order at special term denying a motion made in this action for a preliminary injunction to restrain the Central Company from voting upon such stock. Oelbermann v. Railroad Co., 77 Hun, 332, 29 N. Y. Supp. 545. It is the law of this case, and must be followed without question until reversed by a higher court. Nor am I at liberty to consider the sufficiency of the complaint an open

question, in so far as it remains unmodified by amendment. To that extent the decision of Mr. Justice Ingraham is, I conceive, also binding upon me, as a matter of propriety in the orderly administration of justice. So that the inquiry here is, in effect, limited to the question whether the amendment which the original complaint has undergone meets and overcomes the insufficiencies for which it was held to be bad. The charge of the plaintiffs, it will be remembered, is that the Central Company acquired the stock and bonds of the New York & Northern Railway Company with the preconceived design and purpose of absorbing the latter into its own system; that, in the accomplishment of its purpose, it has disregarded the interests of the minority stockholders of the New York & Northern Railway Company, by failing to provide means with which to pay the defaulted interest on its second mortgage bonds, by preventing the company from earning enough to pay such interest, and by promoting a foreclosure of the mortgage which secured the bonds. The principle contended for, upon which the equity of the complaint is based, is that a trust relation exists between the majority and minority stockholders, out of which springs a duty resting upon the former to act, in the conduct of the affairs of the corporation, in entire good faith, with exact regard for the rights and interests of the minority stockholders, and in a manner which shall be neither inequitable nor oppressive, as against them. While, as thus stated, the proposition involves an element of truth, it in no sense partakes of the character of exact definition. It does not mean that the majority stockholder is bound to contribute any portion of his personal means in support of the corporation, or that he is bound to any greater activity in forwarding corporate interests than any other stockholder, or that he may not remain perfectly passive, leaving the affairs of the corporation to the uninfluenced management and control of its directors. It certainly does not mean that a majority stockholder may not insist upon the enforcement of his rightful claims against the corporation, nor does it mean that the may not acquire and enforce its obligations. It is too well settled to admit of dispute that not only a stockholder, but even a director, may do this. Inglehart v. Hotel Co., 32 Hun, 377, and cases there cited. The true meaning of the doctrine is that the majority stockholder, controlling, as he must, the direction of the company, shall not use the power he is thus permitted to exercise in the promotion of acts by the officers of the corporation which are contrary to the interests of the corporation, and which are promoted by an ulterior purpose of personal advantage detrimental to his costockholders. In other words, there must be an abuse of power, and a violation of duty on the part of the directors of the corporation, in the exercise of the corporate powers, which is subversive of the trust confided to them; and when this takes place the majority stockholder becomes responsible, as a guilty participant. Misconduct on the part of those performing the corporate functions must necessarily be present as an essential element in substantially every case in which the doctrine relied upon by the learned counsel for

the plaintiffs is invoked. I think it will be found, upon an examination of the cases cited by him in support of this proposition, that, in each, misconduct amounting to a breach of trust on the part of the trustees or directors was a concomitant of the action complained of. A clear statement of the doctrine as it exists in this state will be found in the case of Gamble v. Water Co., 123 N. Y. 91, 25 N. E. 201. In giving the opinion of the court, Peckham, J., says (page 98, 123 N. Y., and page 201, 25 N. E.):

"I think that where the action of the majority is plainly a fraud upon, or, in other words, is really oppressive to, the minority stockholders, *and the directors or trustees have acted with and formed part of the majority*, an action may be sustained by one of the minority stockholders, suing in his own behalf and in that of all others coming in, etc., to enjoin the action contemplated, and in which action the corporation should be made a party defendant. It is not, however, every question of mere administration or of policy, in which there is a difference of opinion among the stockholders, that enables the minority to claim that the action of the majority is oppressive, and which justifies the minority in coming to a court of equity to obtain relief. Generally, the rule must be that in such cases the will of the majority shall govern. The court would not be justified in interfering, *even in doubtful cases*, where the action of the majority might be susceptible of different constructions. To warrant the interposition of the court in favor of the minority shareholders in a corporation or joint-stock association, as against the contemplated action of the majority, where such action is within the corporate powers, a case must be made out which plainly shows that such action is so far opposed to the interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests, but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company, and in a manner inconsistent with its interests."

I have, for the sake of emphasis, italicized portions of the above opinion. The decision of Judge Ingraham upon the original complaint in the action was a logical application of the principle so well stated by Judge Peckham. He found that the complaint did not set out any unlawful act on the part of the Central Company, and that, in the absence of any such averment, its motives, intent, and purposes in enforcing its legal rights were immaterial. Oelbermann v. Railroad Co. (Sup.) 27 N. Y. Supp. 945. As I have already said, I do not consider it proper for me to review that decision, the only question open for discussion being whether the new matter embodied in the amended complaint supplies the deficiencies adjudged to exist in the original. I do not think that it does. Charges of evil intent, conspiracy, and fraudulent purpose abound; but they are merely words and phrases, entitled to consideration only in so far as they properly characterize acts which, under the rules of pleading, must be set forth. The fraud must appear from the acts, and not from the mere assertion of the pleader that there have been frauds. In fine, the facts which disclose the alleged fraud, and not the conclusions of the pleader drawn from them, are the facts which the law requires in the statement of a cause of action. In the absence of these, charges of conspiracy, fraudulent combination, evil intent, and other similar words of malign import, are mere matters of denunciation, upon which no relief can be predicated. It is the wrong or damage which

the facts disclose that constitutes the cause of action, and such facts must be alleged as well as proved. It is true that the amended complaint charges that through the influence of the New York Loan & Improvement Company, a former stock and bondholder of the New York & Northern Railway Company, and, after that company had ceased to be a holder of such stock and bonds, through the influence of the Central Company, to whom they had been transferred, the New York & Northern Railway Company was not permitted to pay the defaulted coupons, but that its earnings were diverted by its directors. But it appears in the complaint, elsewhere, not that the company could have paid the defaulted coupons, for it never had the money with which to do it, but that its resources were in the way of increasing, and that it would have been in a position in the near future to pay the same, if its business had not been improperly interfered with by the Central Company, or that financial arrangements might have been made, through the efforts of the Central Company, by which the coupons could have been met. It further appears from the complaint that the Central Company did not become the owner of the bonds and stock in question until about March, 1893, whereas the default upon the coupons in question took place on June 1, 1892. The complaint thus leaves the mind in utter uncertainty as to the import of the charge, unless we find it in the collocation of the charge with the statement that the earnings of the company were diverted by the directors; but what that diversion was, whether it was a diversion in any obnoxious sense, in what respect it involved a breach of duty on the part of the directors,—in fact, whether it involved any breach of duty at all,—are matters which can be determined, and the proper inferences drawn, only upon a statement of the facts and circumstances constituting the act, and showing the relation of the Central Company to it. The conclusion of the pleader is thus again made to stand for the facts from which the conclusion is drawn. The allegation then boils down to a mere expression of opinion on the part of the pleader upon the aspect of a state of facts which he does not disclose. It might well appear that the action of the directors was justifiable, or, if they were mistaken, that they were honest in their purpose, or that their action was as consistent with an innocent as with a guilty intent, in either of which alternatives the pleading would be bad.

The new matter which charges the directors, managers, and executive officers of the New York & Northern Railway Company with refusing business over the railway, and with declining to enter into any arrangement by which the earning capacity of the road might be increased, is open to precisely the same objection. It is a mere hostile characterization by the pleader of acts or omissions which, if stated with circumstance, might be found to bear quite a different construction. In other words, it is again the mere conclusion of the pleader from facts which he fails to disclose. The same may be said in respect to the allegation that profitable business would have been obtained, had it not been for the willful refusal of the management of the New York & Northern Railway Company, "through the influence and domination of the New York Central

Railroad Company, to enter into profitable contracts which were tendered it on behalf of the New York & New England Railroad Company, with which road it connected at Brewster's." The facts and circumstances which, of themselves, would reflect the motive of the board in refusing such contracts, and give character to the charge, are utterly absent. The refusal may have been based upon the insolvency of the New England road, which is elsewhere stated in the complaint, or on the financial inability of the New York & Northern Railway Company to assume the contracts so tendered, or on a lack of facilities to execute them properly, or on some other ground quite reconcilable with an honest purpose, even though it might involve a mistaken exercise of judgment by the directors. How is it possible to say, from the allegation as it stands, that the action of the board in this regard was corrupt? There is a fatal absence of pleadable facts, which expletives and the coloring of the personal opinion of the pleader cannot replace. It is unnecessary to pursue an examination of each of the other amendments. They are either open to the same objection, or are expansions of the original complaint relative to the importance to the Central Company of acquiring the road of the New York & Northern Railway Company, the eagerness of the company in pursuit of that object, and the plans which had been set on foot to realize it. If the means employed were not unlawful (and, as far as the complaint discloses anything, they were not), and if the object thus sought was within the sanction of the law (and it cannot be said that it was not), no cause of action arises by reason of such attempts, for the amended complaint does not state any additional facts which would warrant a finding that, in the transaction which it outlines, any one act of the Central Company, or of the directors of the New York & Northern Railway Company, was corrupt, or tainted with illegality. It is well at this point to recur to what was so well said by Judge Peckham in Gamble v. Water Co., supra, and which seems to support the conclusion to which I have come upon this pleading:

"A case must be made out which plainly shows that such action [the action of the majority stockholders] is so far opposed to the true interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests, but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company, and in a manner inconsistent with its interests."

And again:

"The court would not be justified in interfering, even in doubtful cases, where the action of the majority might be susceptible of different constructions."

It is no answer to the contention that the facts should be pleaded to say that they are evidentiary facts, and therefore not properly pleadable. The distinction between the ultimate facts of a case, which are to be pleaded, and the subordinate facts on which they depend, that are matters of evidence, is easily perceived in each case; and where misconduct is relied upon, or the plaintiff's cause of action grows out of equities existing in his favor, the facts which disclose the misconduct, or out of which the equities arise, become the

ultimate facts, which are properly embraced in the pleading, and which can be stated without minor details,—plainly matters of proof.

In conclusion, the case sums up as follows: The Central Company had the right to buy the stock of the New York & Northern Railway Company, and to vote upon it. This was so decided at general term. Oelbermann v. Railroad Co., 77 Hun, 332, 29 N. Y. Supp. 545. It had the right to buy the mortgage bonds of the same company, and to collect the debt by foreclosure proceedings. This was so decided in the case of Farmers' Loan & Trust Co. v. New York & N. Ry. Co., 78 Hun, 213, 28 N. Y. Supp. 933. It has the right to purchase at the foreclosure sale, and thereafter to use the property so purchased in any manner allowed by law; and what that use may be is certainly no concern of the plaintiffs, whose interest in the property after the sale would have ceased. It has no right, however, to do, or cause to be done, in the management of the affairs of the corporation, any unlawful act, which, in respect to the rights of the stockholders, is a breach of trust, or violation of that duty which springs out of the relation of trustee and cestui que trust which subsists between the directors and stockholders. But as the amended complaint does not, within the rules of pleading, disclose any such acts, it fails to set forth facts sufficient to constitute a cause of action, and it accordingly follows that the demurrer must be sustained.

Judgment for defendants upon the demurrer, with costs, with leave to plaintiffs to serve an amended complaint on payment of costs.