PERE MARQUETTE RAILWAY CO. *v.* PENNSYLVANIA
RAILROAD CO.

1. ARBITRATION AND AWARD—PARTIES.

In dispute between three railroad companies wherein appellee,
which owned a passenger terminal and leased right to use it
to appellant and cross appellant under 50-year agreement that
provided for rentals, operational, and other matters and for
arbitration of differences, the interests of the latter two par-
ties were mutual and not antagonistic so far as arbitration pur-
poses were concerned where dispute involved claim against them
for a share of loss sustained by appellee through injury sus-
tained by its own employee while moving its own train when
he came into contact with a baggage-mail truck that had been
left too close to track by a shipper's employee as the objective
of both appellant and cross appellant was to escape liability
from such claim.

---

Arbitration as a condition of a contract, see 2 Restatement, Con-
tracts, § 551.

2. SAME—RAILROAD PASSENGER TERMINAL—DISPUTE ARISING OUT OF SWITCHING OPERATION.

Where owner of railroad passenger terminal made an agreement covering lease and operational matters with two other railroad companies for their use of the terminal and subsequently made another agreement defining rights and liabilities of the three companies arising out of switching passenger equipment at the station and each agreement contained an arbitration clause, the fact that arbitration of a dispute arising out of switching passenger equipment between the lessor on the one hand and both of the lessees on the other would be by a three-man board composed of one person appointed by the lessor, one jointly appointed by the lessees and a third by such two appointees would not preclude consideration of pertinent provisions of the first agreement.

3. SAME—CONTRACTS—SUBMISSION OF QUESTION TO BOARD—COURTS.

Where no question is raised as to legality of contracts between owner and lessees of railroad passenger terminal whereby each party agreed to submit differences to arbitration, the courts do not decide question of liability of parties against whom lessor presented claim where the question of liability has not yet been arbitrated.

4. SAME—LIABILITY—COURTS—STATUTE OF LIMITATIONS.

The bar of the statute of limitations is an affirmative defense and where controlling arbitration agreements do not bar arbitration of claims outlawed by the statute, the effect of the statute pertains to liability which is not for the court to decide where matter of liability has not been submitted for arbitration (3 Comp. Laws 1929, § 13976, as amended by Act No. 72, Pub. Acts 1941).

5. SAME—LIABILITY UNDER EITHER OR BOTH OF TWO AGREEMENTS—COURTS.

Where there were two separate agreements between owner of railroad passenger terminal and lessees thereof, each of which contained provisions relating to arbitration of differences, the issue as to whether or not the lessor had a valid claim against the other parties under either or both such agreements is a matter for arbitration and not for the courts.

6. SAME—DOMINATION—EQUITY.

Domination of a board of arbitration by a party to either side of a dispute is not a proper conception of arbitration in a court of equity.

7. Costs—Chancery Cases—Parties Prevailing on Appeal Only
  in Part.

> No costs are allowed on appeal from decree in suit between parties to arbitration agreements where each party prevails only in part.

Appeal from Wayne; Chenot (James E.), J. Submitted April 10, 1946. (Docket No. 32, Calendar No. 43,331.)   Decided May 13, 1946.

Bill by Pere Marquette Railway Company against Pennsylvania Railroad Company and New York Central Railroad Company to enjoin arbitration proceedings.   Decree for defendant Pennsylvania Railroad Company.   Plaintiff appeals.   Defendant New York Central Railroad Company cross-appeals.   Modified and affirmed.

*John C. Shields* and *Edward H. Goodman,* for plaintiff.

*Angell, Turner, Dyer & Meek,* for defendant Pennsylvania Railroad Company.

*Henry P. Stacy* (*John J. Danhof,* of counsel), for defendant New York Central Railroad Company.

Boyles, J.   In this case the Pere Marquette Railway Company filed a bill of complaint in the Wayne county circuit court in chancery to enjoin the defendant the Pennsylvania Railroad Company from proceeding with a certain arbitration until the court determined under which of two arbitration agreements a certain claim of the Pennsylvania Railroad Company fell, also until the court determined whether said claim was barred by the statute of limitations,* and whether it was a valid claim.   The

---

* 3 Comp. Laws 1929, § 13976, as amended by Act No. 72, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 13976, Stat. Ann. 1945 Cum. Supp. § 27.605).—Reporter.

New York Central Railroad Company was also made a defendant in the case, and filed a cross bill seeking somewhat similar injunctive relief against the Pennsylvania Railroad Company. The circuit judge heard the case on agreed statements of fact filed in the cause and entered a decree that the claim of the Pennsylvania Railroad Company falls within the provisions of a first arbitration agreement made in 1900, that the statute of limitations did not bar the right to submit the claim to arbitration, that the validity of the claim was not a question for the court to decide, that the claimant the Pennsylvania Railroad Company could proceed with arbitration under said first arbitration agreement, under which the Pennsylvania Railroad Company could select one arbitrator, the other two companies should be considered as one party to the dispute with the right to select the second arbitrator, and the two so chosen should select the third. From this decree the Pere Marquette Railway Company appeals and the New York Central Railroad Company cross-appeals.

For brevity and clarity we will refer to the Pere Marquette Railway Company as Pere Marquette, the Pennsylvania Railroad Company as the Pennsylvania, and the New York Central Railroad Company as the New York Central.

The essence of this controversy is which of two arbitration agreements controls the appointment of arbitrators and which agreement controls the consideration of the dispute by the arbitrators after their appointment. According to the position taken by the plaintiff Pere Marquette, the decision of this court in that regard will in effect determine the rights of these three disputants, as to whether the Pennsylvania can recover on its alleged claim.

In 1900 an agreement was entered into for a 50-year term by these three railroad companies, or by

their predecessors from whom their present rights stem.   Under .its provisions the Pennsylvania (by its predecessor company) has provided a passenger terminal station in Grand Rapids and leased the right to use it, together with its train shed, tracks and other facilities, to the other two companies, for the 50-year term of the agreement.   The three companies use it as their terminal station in Grand Rapids for their passenger trains.   From 1900 to January 1, 1918, each company, with its own locomotives and employees, did its own switching for passenger trains in, to, and from, said terminal. From January 1, 1918, to March 1, 1920, during which time railroads were taken over and operated by the government of the United States under a director general of railroads, certain economies were put into effect combining the switching operations. When railroads were returned to their owners on March 1, 1920, these three companies continued in effect certain switching operations, in the interest of economy and convenience, by mutual agreement, until a second written agreement was entered into by these three companies in 1931, which is still in effect.   For brevity, we will refer to these two written agreements as the 1900 agreement and the 1931 agreement.

Primarily, the 1900 agreement is a lease by Pennsylvania of the right to use its passenger station facilities, train shed, tracks, et cetera, in Grand Rapids, to Pere Marquette and New York Central, for 50 years. The amounts and manner of payment of rentals and interest on investment, expense of operation, management of facilities, and similar provisions are not involved in the present case.  We are only concerned with the following provisions in the 1900 agreement:

"d.   Loss or damage to the property of the companies using the station, or to persons or property

in their charge, *or to employees* or to third parties, shall be borne as follows:

"1. If through a company's employee, or through a cause not chargeable to an employee, either joint or individual, then by the company causing the loss or damage, and such company shall indemnify and save harmless the other companies not at fault from any loss occasioned thereby.

"2. If through a joint employee, or if the cause cannot be located, then the loss shall be classed as an operating expense, and divided as such in the same proportion as the other operating expenses of the month in which the damage occurred.

"3. If through the combined negligence of any company's employee and a joint employee, the damage to the property of, or property or persons in charge of the employing company, or to third persons, shall be borne by said employing company, while damage caused to the station by such action shall be treated as an operating expense and divided accordingly.   *   *   *

"i. If any disagreement shall arise between the parties hereto, or any of them, with reference to the proper construction of this agreement, or with reference to the rights, privileges, obligations or liabilities of the respective companies thereunder, or the performance of the terms thereof, each party to such disagreement or dispute shall select a disinterested referee of experience in railway management and the said referees, in case there are two, shall select another, and the three so chosen shall promptly hear and determine such differences, and their decision, or the decision of a majority of them, shall be final and conclusive upon the parties."

The 1931 agreement is primarily for the purpose of defining the rights and liabilities of the three companies, arising out of switching passenger equipment at the union station. This is indicated by its first three paragraphs, as follows:

"Whereas, under date of February 1, 1900, the Grand Rapids & Indiana Railway Company, the Pere Marquette Railroad Company, and the Michigan Central Railroad Company, executed a tri-party agreement covering ownership, maintenance, operation and rental of Union Station facilities at Grand Rapids, Michigan; and

"Whereas, the Pere Marquette and Pennsylvania Company performs certain work of switching passenger equipment for their respective roads, and for the Michigan Central, in and about the Union Station at Grand Rapids, Michigan, and between said station and the coach yards where said equipment is stored, all without written agreement defining liability for loss, damage or injury; and

"Whereas, the above-mentioned parties now desire to enter into a written agreement defining liability for loss, damage or injury which may be caused during all operations of switching or by movement to or from yards and station, and also to provide for the basis and manner of billing the Michigan Central for the services rendered by the Pennsylvania Company and the Pere Marquette in handling its passenger train equipment to and from the Union Station and for switching its said equipment within the limits of Union Station property:

"Now, therefore, it is mutually agreed by and between the respective parties hereto as follows."

It is then provided that employees of the Pennsylvania when engaged solely in switching or moving its own trains or cars shall be considered as the sole employees of Pennsylvania, with further provisions (not material here) regarding employees of Pennsylvania when switching train equipment of Michigan Central, either separately or in conjunction with Pennsylvania's own equipment, and also as to employees of Pere Marquette when engaged in switching operations (also not material here).

That part of the 1931 agreement material to the present dispute is as follows:

"*Seventh:* Each party shall respectively assume, bear and pay for all loss and damage to its own property, to property in its care and custody, to its sole employees and persons in or upon its property, or in its care and custody, and property damaged and persons, including its joint employees, injured by the trains, cars or engines being moved or operated or in control of its sole employees or its said joint employees, when attributable as a proximate cause to (a) the fault or negligence of its sole employees combined with the fault or negligence of the sole employees of either or both the other parties hereto, (b) the fault alone of its joint employees, (c) the fault of its joint employees combined with that of its sole employees or the sole employees of either or both the other parties hereto, (d) to the act of God, (e) to fire or without fault; and all other damages and injury, including damages to the joint locomotives, shall be assumed, borne and paid in equal portions by the parties hereto whose employees by their fault or negligence contributed thereto.

"*Eighth:* If at any time a dispute shall arise concerning any matter or thing herein mentioned or contemplated the same shall be referred to a board of arbitration composed of disinterested and competent men familiar with railroad operations. If such dispute be between two only of the parties or between the three parties and any two are in agreement and accord, then said board shall consist of three arbitrators; in event of dispute between two parties only, then each party shall appoint one arbitrator, or if between the three parties and any two are in agreement and accord then the two so in agreement and accord shall appoint one arbitrator and the third party shall appoint one arbitrator, in any event the two arbitrators so appointed shall select and appoint a third arbitrator thereby creat-

ing a board of three. If such dispute shall be between all three of said parties, no two being in agreement and accord, then each of said parties shall select and appoint one arbitrator and the three so appointed shall select and appoint two more thereby creating a board of five.   *   *   *

"It is agreed that the decision of such arbitrators or a majority of them, after due and reasonable notice to and privilege of full hearing by the parties to such dispute, of which due and reasonable notice and hearing, the ruling of said arbitrators shall be conclusive, shall be final and conclusive and binding upon the parties to such dispute."

The crucial issue in this dispute is as to how many arbitrators shall be selected, who shall select them, and which agreement shall control the arbitrators in their consideration of the dispute. Are there three parties to this dispute, two of whom are in agreement and accord? If so, only three arbitrators are to be selected under either agreement, and these three arbitrators decide the dispute. Under the 1900 agreement, three is the maximum number of arbitrators. Under the 1931 agreement, there may be either three or five arbitrators, depending upon whether there are two parties or three parties to the dispute, and more particularly depending on whether two of the disputants are in agreement and accord when all three companies are involved in the dispute. This brings us to a consideration of the nature of the present dispute, having in mind that inasmuch as it is between all three companies and if the procedure which is set up in the 1931 agreement controls the selection of the arbitrators, also if no two of the disputants are in agreement and accord, the board of arbitration shall consist of five members.

On June 17, 1932, one William W. Cothrell was employed by the Pennsylvania as a yard conductor.

He was assigned to the so-called night coach job at the said Grand Rapids passenger terminal. The duties of the night coach crew included the making up of New York Central's passenger train No. 106 and Pennsylvania's passenger trains Nos. 518 and 503 in the train shed at the said Grand Rapids passenger terminal. Shortly after 8:15 p. m. the crew had finished making up a New York Central train and, with its yard engine and five cars, which comprised the equipment of Pennsylvania's trains Nos. 518 and 503, proceeded to make up those trains on track No. 4 of the train shed. As this movement was being made, Pennsylvania's locomotive was shoving said five cars ahead of the locomotive in a southerly direction. Cothrell was riding (that is, standing in the stirrup) on the side of the front car and was injured when his leg became caught between said car and a baggage-mail truck which was standing on the station platform close to the track. Immediately before the accident, the baggage-mail truck was not standing far enough from the edge of the platform to clear a man riding the stirrup on the side of the car. It had been left there by an employee of a shipper. Pennsylvania paid $12,500 to Cothrell in settlement of his claim for damages for said personal injuries and also paid certain medical, hospital and other expenses aggregating $1,257.15, making the total $13,757.15 and, in return, took from Cothrell a release of liability. Pennsylvania then billed the Pere Marquette and New York Central for proportionate shares of these expenditures, and instituted several attempts to submit to arbitration the question of the liability of the Pere Marquette and New York Central for a part of the same, in amounts based on other provisions in the agreements as to how these companies should share certain liabilities. Finally, Pere Marquette refused

to participate in the arbitration and filed the instant bill of complaint, in effect to obtain a determination of the rights of these parties under the circumstances.

We are not in accord with the claim advanced by the Pere Marquette and the New York Central to the effect that their interest in the dispute is not mutual, but is antagonistic to each other. Pennsylvania asserts a claim against both of them. According to the Pere Marquette's bill of complaint, Pennsylvania billed Pere Marquette for $5,468.75, and New York Central for $2,358.49, claiming they were respectively liable for those amounts, according to the 1900 agreement, being in the proportion which the number of trains each company dispatched to and from the station bears to the total number of such trains. The Pere Marquette and New York Central both deny liability, mainly on the ground that they are absolved from liability under the 1931 agreement.

The objective sought to be accomplished by the Pere Marquette and the New York Central is substantially the same. Both seek to escape liability. We agree with the circuit judge, that Pere Marquette and New York Central are "in agreement and accord," wherefore under the procedure set up in the 1931 agreement for appointment of arbitrators Pennsylvania will select one arbitrator, Pere Marquette and New York Central will select a second, and the two so chosen will select a third.

However, this conclusion that only three arbitrators are to be chosen in this manner does not necessarily mean that all of the other provisions of the 1931 agreement are to control the arbitrators in their decision, to the exclusion of their consideration as to any possible bearing the 1900 agreement may have on the result. The question whether

Pennsylvania has a valid claim against either or both the Pere Marquette and New York Central is a matter which these three disputants have agreed to submit to arbitration. No question is here raised as to the legality of these two arbitration agreements. We agree with the circuit judge that the question of liability is not one for the court to decide. Nor is it for the court to decide whether Pennsylvania's claim is barred by the statute of limitations. The most that can be said in that regard is that the arbitration agreements do not bar arbitration on the ground that a claim may itself be outlawed by the statute. The bar of the statute of limitations must be relied on as an affirmative defense, which may be considered by the arbitrators, and is not for the court to decide.

We are not in accord with that part of the decree which states that the claim of Pennsylvania falls only within the provisions of the 1900 agreement, and that arbitration of the dispute must be under the terms of the 1900 agreement. The effect of this would be to remove from consideration by the arbitrators any bearing the 1931 agreement may have on the question of liability. The issue as to whether or not the Pennsylvania has a valid claim against the other parties either under the 1900 or the 1931 agreement, or both, is a matter for arbitration, not for the court.

We do not overlook the fact that under a literal construction of the arbitration provisions in the 1900 agreement, each of these three disputants would select one of the three arbitrators whose decision would be final. In short, Pere Marquette and New York Central could select two arbitrators who were favorable to their contention that they were not liable to Pennsylvania, and the selection of the third, by Pennsylvania, would be useless.

Likewise, if five arbitrators were to be selected under the 1931 agreement, on the theory that the Pere Marquette and the New York Central were not "in agreement and accord," Pere Marquette and New York Central could each appoint one of the first three arbitrators, and when Pennsylvania had appointed the third, these three would then select two more to create a board of five. In that manner Pere Marquette and New York Central could dominate the arbitration, just as much as these two companies could dominate an arbitration under the 1900 agreement if they were to select two of the three arbitrators. The result of arbitration could thus be determined when the appointment was made, *i. e.*—no liability of Pere Marquette and New York Central. That is not a proper conception of arbitration in a court of equity. These three disputants are in an equity court and it must be assumed that they want a fair, just and impartial consideration of their controversy by the arbitration which they have chosen as the manner of settling their disputes, and not by a one-sided arbitration which from its beginning would be merely an idle ceremony.

A decree may be entered in this court in accordance with the decree in the circuit court, except for elimination of the provisions in paragraphs 1 and 5 that the arbitration shall proceed under the terms of the 1900 agreement. No costs, each party having prevailed only in part.

Butzel, C. J., and Carr, Bushnell, Sharpe, Reid, North, and Starr, JJ., concurred.