**In re CALTON CRESCENT, Inc.**

United States District Court
S. D. New York.
July 13, 1948.

Beekman & Bogue, of New York City (Edward K. Hanlon and Bertrand L. Kohlmann, both of New York City, of counsel), for Manufacturers Trust Co., as Trustee.

David W. Kahn, of New York City, for creditors.

GODDARD, District Judge.

This is a petition to review the order of a referee in bankruptcy overruling the objections of an Indenture trustee and creditor to the allowance of the claims in full of three creditors, Regine Becker, Emily K. Becker and Walter A. Fribourg. The claims are founded upon debenture bonds of the debtor corporation owned by the three creditors. The trustee contended that in each instance these claims should be limited to the amount paid by the creditor for such debentures.

The amounts of these claims as filed and allowed on which a dividend of 43.61% is contemplated, and the cost to the creditors of the respective debentures which is the basis for their claims, are as follows:

|  | Amount and Allowance of claim |  |
|---|---|---|
| Regine Becker | $44,500. | $3,060.63 |
| Emily K. Becker | 52,800. | 5,010.00 |
| Walter A. Fribourg | 55,000. | 2,604.80 |

The debtor owned and operated an apartment house in New Rochelle, New York, known as the Calton Court Apartments, which it had taken over upon default of a mortgage in September, 1933, and twenty years debentures in the amount of $256,800 were issued, the Manufacturers Trust Company [the objector] serving as Indenture trustee. A loan of $175,000 secured by a first mortgage was obtained from the Poughkeepsie Savings Bank. In 1941, prior to the time the Beckers became officers of the corporation which was in April, 1942, Sanford Becker and Fribourg, a friend of the Beckers, purchased some of the debentures in the open market. From 1941 until 1945 Regine Becker, mother, and Emily K. Becker, wife of Sanford Becker, as well as others, purchased debentures in the open market. In 1942 the debtor, which had been operating at a loss, was in default on the mortgage held by the Poughkeepsie Bank and it was decided to obtain $15,000 on a second mortgage. All stockholders were given an opportunity to participate in

making this loan, but the only ones who responded were Regine Becker, Emily K. Becker and Fribourg, who advanced the $15,000 in equal shares. In February, 1942, an offer of $220,000 was recieved for the property but failed to receive the necessary stockholders' approval. On January 8, 1946, the property was sold for $300,000 subject to the Poughkeepsie Bank's mortgage of $154,000, $70,000 in cash and the debtor taking back a purchase money mortgage of $76,000, which was sold by order of the court for $66,000, netting the debtor some $115,000 after satisfying the second mortgage of $15,000 and paying broker's commissions of $6,000.

On May 23, 1946, the debtor filed an arrangement petition under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701. et seq.

The trustee withdrew its objection to $5,000 of the Fribourg claim as these debentures had been purchased prior to the time the Becker-Fribourg group took over control of the debtor. The basis for the trustee's objections was twofold, namely—

That the debtor was insolvent at all times during the years 1942–1945, both inclusive, when the debentures in question were acquired, and that the directors and persons, such as the three creditors, affiliated with them, related to them or acting in conjunction with them, cannot profit from any dealings in securities of the debtor, and at best may only recover the amounts actually expended, with interest, for the purchase of the debentures; [2] that the said three creditors are disqualified from profiting from transactions in the debtor's securities, because they acquired the debentures in question by taking advantage of their knowledge as insiders without appropriate and adequate disclosure to the sellers of such securities and therefor should not be allowed to profit by reason of their over-reaching.

The referee held that "The law seems to be well settled that a director may acquire for himself unmatured obligations of the corporation of which he is a director and enforce same for the full face amount thereof, even if at the time he so acquired said obligations the corporation is insolvent, provided that at said time the debtor had not provided any special fund to pay said obligation, nor any special liquidation had been ordered through the institution of Receivership or kindred proceedings, nor was the debtor in the field to settle its said obligations, nor was the acquiring of such obligations by the director unfair to the debtor nor involved competition with it, and again provided of course, that in acquiring such obligations the director was not guilty of overreaching by unfairly using his special knowledge in dealing with those from whom he acquired the obligations."

The referee in rendering his opinion made detailed findings of fact to support his conclusions. Among these findings are the following:

"54. The record does not warrant a finding that in the purchases of debentures by the Becker ladies or Fribourg there was practiced any overreaching or concealment or failure to disclose to any other debenture holders material facts.

"55. At all times when purchases of debentures were made by or for the Becker ladies and Fribourg, debtor was insolvent in that the aggregate of its property was not at a fair valuation sufficient in amount to pay its debts.

"56 At none of these times when any debentures, which were by their terms due September 27, 1953, were purchased by or for the Becker ladies and Fribourg, had a special fund been provided for their payment by the debtor; nor had any special liquidation thereof been ordered; nor was the debtor in the field to settle its indebtedness on the debentures; nor were these purchases unfair to debtor nor did they involve any competition with it."

The referee found as a conclusion of law that Fribourg's proof of debt should not be treated as if it were a proof of debt filed by a director of the debtor. While it is immaterial to the disposition of this review, I am persuaded that the evidence warrants a finding that the relationship between Fribourg and the Beckers [directors] was of such a nature with respect to the affairs of the debtor so

as to treat his proof of debt as a proof of debt of a director.

■ Although it is true that federal bankruptcy law, not state law, governs the distribution of a bankrupt's assets to its creditors [Prudence Realization Corp. v. Geist, 316 U.S. 89, 62 S.Ct. 978, 86 L.Ed. 1293; American Surety Co. v. Sampsell, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663; Heiser v. Woodruff, 327 U.S. 726, 66 S. Ct. 853, 90 L.Ed. 970; Vanston Bond-holders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162], the validity of a claim, in the absence of overruling federal law, is determined with reference to state law. Vanston Bond-holders Protective Committee v. Green, supra; Remington on Bankruptcy, Vol. 2, Sec. 975.

The law applied by the referee is the law of New York when the corporation is a going concern. Moore Constr. Co. v. U. S. Fidelity & Guarantee Co., 293 N.Y. 119, 125, 56 N.E.2d 74; Seymour v. The Spring Forest Cemetery Association, et al., 144 N.Y. 333, 39 N.E. 365, 26 L.R.A. 859; Claude Neon Lights, Inc. v. Federal Electric Co., Inc., 250 App.Div. 510, 295 N.Y.S. 1; Hauben v. Morris, 255 App.Div. 35, 5 N.Y.S.2d 721, affirmed 281 N.Y. 652, 22 N.E.2d 482; Inglahart v. Thousand Island Hotel, 32 Hun. 377; Oelber-mann v. New York & N. R. Co., 14 Misc. 131, 36 N.Y.S. 1096.

The rule that directors and those who occupy a similar position may acquire the unmatured obligations of a going concern and enforce the same for the full face amount if such purchase is fair to the corporation and involves no competition with the corporation, has been approved and followed in this district. Ripperger v. Allyn, et al., D.C., 25 F.Supp. 554, Patterson, D.J., Southern District of New York.

A group of cases have held that officers, directors and attorneys of a corporation may not, while the corporation is insolvent, purchase claims against it at a discount and then enforce such claims in a subsequent bankruptcy proceeding at their full face value. Monroe v. Scofield, 10 Cir., 135 F.2d 725; In re Philadelphia &

Western Ry. Co., D.C., 64 F.Supp. 738; In re Los Angeles Lumber Products Co., D.C., 46 F.Supp. 77; In re McCrory Stores Corp., D.C., 12 F.Supp. 267; In re Jersey Materials Co., D.C., 50 F.Supp. 428.

The above cases deal with situations where some type of bankruptcy proceeding was imminent and was known to be so by the officer, director, or person affiliated with them who made the purchases.

■ However, these cases do not seem to cover a situation where the corporation, although insolvent in a bankruptcy sense, is still a "going concern" for the mere fact that a corporation is insolvent does not dissolve the corporation and make the directors mere trustees of its assets if it is still a "going concern." White, Potter & Paige Mfg. Co. v. Pettes Importing Co., C.C. Mo., 30 F. 864; Contra Costa Water Co. v. City of Oakland, 159 Cal. 323, 113 P. 668, 682; Public Market Co. of Portland v. City of Portland, 171 Or. 522, 130 P.2d 624, 646, 138 P.2d 916; Michigan Wolverine Student Co-op. v. Wm. Goodyear & Co., 314 Mich. 580, 22 N.W.2d 884, 888. This distinction as to the duty of a director when the corporation, although insolvent is a going concern, was recognized in Sanford Tool Co. v. Howe, Brown & Co., 157 U.S. 312, 15 S.Ct. 621, 39 L.Ed. 713; see Asheville Lumber Co. v. Hyde, C.C.Pa., 172 F. 730, 733.

In the case at bar these purchases were made when the corporation was a going concern and in later years even began to show an operating surplus. Although the referee made a finding of insolvency, it does not appear that the referee in making this finding used a going concern valuation. Pacific States Lumber Co. v. Bargar, 9 Cir., 10 F.2d 335; In re Nathanson Bros. Co., 6 Cir., 64 F.2d 912.

At all the times that these purchases were being made these securities of the debtor were being traded in over the countermarket. Under these circumstances the referee was right in applying the rule as laid down in the New York cases. The cases which appear to have language to the contrary are clearly distinguishable.

on their facts. The purchases of the debentures in question were made long before the filing of the petition under Chapter XI of the Bankruptcy Act, on May 23, 1946, or before contemplation of filing the petition, in some instances—months, and in others—years.

The referee further found that a finding that overreaching or concealment was practiced in the purchase of these securities was not warranted. The record does not show that this finding was clearly erroneous and hence must be confirmed. General Order 47; In re Rosenberg, 2 Cir., 145 F.2d 896, 898.

■ The referee's order including the taxation of the cost of stenographer's minutes is therefore confirmed in all respects.