GLENWOOD MANUFACTURING COMPANY, Appellant, vs. SYME and others, imp., Respondents.

*February 8 — February 26, 1901.*

*Corporations: Officers: Purchase of corporate notes for individual benefit: Collateral securities: Equity: Remedy at law: Laches: Pleading.*

1. Certain guarantors of the notes of a corporation had pledged stock in the corporation and an interest in a partnership as collateral security for said notes and also for their individual indebtedness to the pledgee. The president of the corporation, who was also one of the guarantors of said notes and who had an interest in said partnership, purchased for himself, from the pledgee, said corporate notes and also the pledged collaterals, for less than their true value. The corporation was a going concern, but was embarrassed for want of ready money and unable to pay its debts as they matured. It was alleged that the president made no effort to purchase the corporate notes and collaterals for the benefit of the corporation, although he knew such a purchase would greatly benefit the corporation and all its stockholders, but purchased for himself without the consent of any of the other stockholders. It did not appear that the corporation had any legal right to have the collaterals remain pledged for the security of its debt. *Held*, that the purchase of such collaterals by the president of the corporation did not in any way conflict with any duty he owed to it, and it had no enforceable interest therein.

2. An officer and director of a going corporation may purchase its outstanding obligations at a discount, for his own benefit, and enforce them in full, where he owes no duty to the corporation, inconsistent with such purchase, to act for its benefit.

3. Where the corporation has not been called upon to pay anything upon its notes so purchased by one of its officers, and notes given by it in renewal of the notes purchased are still held by the heirs of such officer, its rights in respect thereto can be protected in an action brought to enforce the notes, in defense of a recovery thereon, and equitable relief is unnecessary.

4. Where in such a case a considerable time has elapsed since the purchase of the notes and since the death of the purchaser, a complaint asking equitable relief in respect thereto should excuse the delay by showing that prompt action was taken upon discovery of the facts.

APPEAL from an order of the circuit court for St. Croix county: E. W. HELMS, Circuit Judge. *Affirmed.*

This is an appeal from an order sustaining a demurrer to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. The complaint is of great length, but may be summarized as follows:

It first states the corporate character of plaintiff, the amount of its capital stock, the amount issued, the names of stockholders, and the amount held by each. Alexander Syme was president and a director. Plaintiff's business was manufacturing and selling wood products at Glenwood, Wisconsin. The value of its property and assets was $300,000, and its liabilities other than its capital stock were $227,000. On November 1, 1896, and for a considerable time thereafter, the company was embarrassed for want of ready money, and unable to pay its debts as they matured. On and prior to said date a copartnership was conducting a general store at Glenwood, known as Johnston, Syme & Baldwin, composed of the following named persons, whose interests in said firm were: James Johnston, three eighths; Alexander Syme, one fourth; H. J. Baldwin, one fourth; and *David Syme,* one eighth. The first two named were stockholders in the plaint-

Glenwood Mfg. Co. vs. Syme and others.

iff corporation. The value of James Johnston's interest in said firm was $30,000. The prosperity of said firm depended largely upon the continuation of the business of the plaintiff. The firm dealt with its employees and extended credit to plaintiff during 1896 and early part of 1897 of not less than $30,000. On November 1, 1896, plaintiff was indebted to one H. L. Humphrey, as assignee of Alfred J. Goss, on two notes of $9,000 each, but which had been reduced by payments to the sum of $11,000. Alexander Syme and William and James Johnston were guarantors. At the same time the Johnstons were indebted to Humphrey in a large amount, who held as collateral security for all of said indebtedness, among other things, 427 shares of plaintiff's stock, and the three-eighths interest of said James Johnston in the firm of Johnston, Syme & Baldwin, which had been pledged by the Johnstons, or one of them, to secure said indebtedness. Humphrey offered to sell the notes of plaintiff, the 427 shares of stock, and the three-eighths interest in said firm for $15,000, then worth in the aggregate at least $45,000. Alexander Syme purchased the same for $15,000, for himself, without the knowledge or consent of any of plaintiff's stockholders, knowing that the purchase by plaintiff would be greatly for its interest. To conceal the true character of the transaction, Syme caused the purchase to be made in the name of W. P. Hewitt, who held the same until October 11, 1897, when it was turned over to Syme. The latter took and controlled the three-eighths interest in said firm, and had it until his death, in March, 1898. The firm name was thereafter changed to Syme, Baldwin & Co. No accounting has been had, and, unless otherwise decreed, the surviving partners will pay over the value of said three-eighths interest to Syme's heirs.

In February, 1897, plaintiff was indebted on a note of $18,000 to the Skowhegan Savings Bank, upon which Syme was indorser or guarantor. Without the knowledge or con-

sent of any of the stockholders, or without any effort to purchase the same for plaintiff, Syme purchased the same for $9,000 with his own funds. At the time of the purchase from Humphrey, plaintiff was indebted to Johnston, Syme & Baldwin over $30,000. During his lifetime Syme caused plaintiff to pay on said indebtedness $4,006.17, August 10, 1897, and $3,810.12, October 4, 1897, at a time when plaintiff was still in need of ready money to pay pressing demands. On October 16, 1897, Syme caused plaintiff to execute to him two notes,— one for $11,743.93, and the other for $14,500,— for the indebtedness of plaintiff to the firm of Syme, Baldwin & Co., which were charged to said Syme on their books, and the only right he had thereto was by virtue of his five-eighths interest therein, and at least $20,432.43 of said amount was received by him on account of the three-eighths interest purchased from Humphrey. On October 11, 1897, Syme presented the notes he had purchased from the bank and from Humphrey to plaintiff, and demanded and received a note for the sum of $29,531.18, which note is now held by his heirs. Between August, 1897, and April, 1900, Syme during his lifetime, and his heirs after his death, by using the 427 shares purchased from Humphrey, were enabled to control the election of plaintiff's officers and the business policy of the corporation. Syme died intestate, holding said claims. Administration was granted on his estate December 22, 1898, and the time for presentation of claims expired the first Tuesday of September, 1899. It is alleged that the notice thereof was never published for four successive weeks as required by law, but was published December 29, 1898, and January 5, 12, and 19, 1899. The administrator inventoried the three-eighths interest aforesaid at $20,084.88; said 427 shares of plaintiff's stock, $8,540; and said three notes of plaintiff, $45,277.52. During the course of administration plaintiff paid the two notes of $11,743.93 and $14,500 to the administrator. Some of the money was used to pay

debts of the estate, and the remainder has been distributed to the defendant heirs. Defendants are alleged to have had knowledge of the acts of Syme in the premises.

The prayer for relief is for an accounting regarding the three-eighths interest in the aforesaid firm, and a settlement on the theory that plaintiff was entitled to the benefit thereof; also that plaintiff is entitled to the 427 shares of stock, and a surrender of the notes taken in renewal of the ones purchased from Humphrey and the bank, upon allowance of the sum actually paid out by Syme.

For the appellant there were briefs by *George P. Knowles* and *Clapp & Macartney*, and oral argument by *N. H. Clapp*. To the point that an officer of a corporation cannot purchase the obligations of the corporation at a discount and enforce them at their face, they cited *McDonald v. Haughton*, 70 N. C. 393; *Hill v. Frazier*, 22 Pa. St. 320; *Higgins v. Lansingh*, 154 Ill. 301; *Bonney v. Tilley*, 109 Cal. 346.

For the respondents there was a brief by *S. J. Bradford* and *Warner & Lawrence*, and oral argument by *C. G. Lawrence*.

BARDEEN, J. The sole question for determination is whether we can spell out from the allegations of this complaint a cause of action in favor of the plaintiff and against Alexander Syme. An attempt has been made to allege facts sufficient to show that he was guilty of a breach of duty towards the corporation, which rendered him liable thereto, and for which the defendants, as his heirs, are answerable. As a premise it is to be said that during the pendency of all the transactions set forth in the complaint the plaintiff was a going corporation, in debt, and embarrassed for want of ready money with which to meet current demands. Alexander Syme was its president and a director, and was familiar with its business affairs. At the time of the transaction with Humphrey the company was unable to

meet current demands. It is not shown whether the notes of the corporation held by Humphrey were past due or not. Although the corporation had no funds and had other pressing obligations, it is alleged that Syme, knowing that the purchase of the notes and collateral held by Humphrey "would greatly benefit this plaintiff and all the stockholders thereof, without making any effort to buy the same for this plaintiff, and without the knowledge or consent of any of the other stockholders of the plaintiff," made the purchase for himself in the name of his brother-in-law, Hewitt. How much was paid for plaintiff's notes, or how much for the collateral, is not stated. In the aggregate, the notes and the other securities are said to have been worth $45,000. If it be admitted that the 427 shares of stock and the three-eighths interest in the firm of Johnston, Syme & Baldwin were pledged as security for plaintiff's note,— a fact concerning which the complaint leaves some doubt,— we are at a loss to understand upon what principle of law or equity the plaintiff can claim any interest in the same. Certainly, if plaintiff had paid its notes, the guarantors who put up the collaterals would have been released. It had no claim thereon, and, if it had purchased the same, could not have enforced such purchase against the guarantors of its notes. If the corporation could have raised the money, it would have been its clear duty to have paid the notes and thus released the securities. Again, it is not suggested how plaintiff had any authority under its charter to purchase an interest in a mercantile firm. It may also be doubtful if it had any power to purchase its own stock. Certainly a corporation unable to pay its debts as they matured would not be permitted to purchase its own capital stock or buy an interest in an outside partnership; and if Syme, as managing officer, had counseled or done such a thing with the company's money, he would have been guilty of a gross breach of duty. On the other hand, Mr. Syme was a member of

the firm of Johnston, Syme & Baldwin. The interest of Mr. Johnston was for sale. The corporation had no legal right, either direct or remote, that it should remain pledged for the security of its debt. A purchase of that interest by Mr. Syme did not in any way conflict with any duty he owed the corporation. It did not increase its liabilities or diminish its assets. We will dismiss this branch of the case with the assertion that, so far as the purchase by Mr. Syme of the shares of stock and the interest in the firm is concerned, the complaint is barren of facts showing that plaintiff has an enforceable interest therein. It is also impossible to say with any certainty whether the notes purchased at the same time were purchased at a discount.

The remaining question involves the right of an officer and director of a corporation to purchase outstanding liabilities of the corporation at a discount and enforce them in full. The relative duties and obligations of managers and officers of a corporation to it and its stockholders have been likened to those of trustees and *cestuis que trustent*, and have been considered and enforced with varying degrees of strictness by the courts of this country. They are, however, of one accord on the proposition that a director of a stock corporation occupies one of those fiduciary relations where his dealings with the subject matter of his trust or agency, and with the beneficiary or party whose interest is confided to his care, are regarded with jealousy by the courts. He must deal with the interests confided to his care with conscientious fairness, and will not be permitted to secure advantages by virtue of his position prejudicial to the interests he represents. *Twin-Lick O. Co. v. Marbury*, 91 U. S. 587. This court has asserted that rule in numerous cases, a few of which are here noted: *Cook v. Berlin W. M. Co.* 43 Wis. 433; *Haywood v. Lincoln L. Co.* 64 Wis. 639; *Pittsburg M. Co. v. Spooner*, 74 Wis. 307; *Hinz v. Van Dusen*, 95 Wis. 503. The strictness of the earlier cases is somewhat

relaxed in instances when the corporation is still a going concern, as will be noted in the case last above cited. There the distinction between the power of directors in a solvent and insolvent corporation is pointed out by Mr. Justice MARSHALL, and is reasserted in *South Bend C. P. Co. v. George C. Cribb Co.* 97 Wis. 230. See *Barth v. Koetting,* 99 Wis. 243; *Slack v. N. W. Nat. Bank,* 103 Wis. 57. The cases all agree that an officer or director cannot rightfully seek and obtain profit at the expense of the corporation or its stockholders, and is bound to manage its business affairs so as to promote the common interests. The rule has been broadly stated by some of the authorities that " a trustee, executor, or assignee cannot buy up a debt or incumbrance to which the trust estate is liable, for less than is actually due thereon, and make a profit to himself." Perry, Trusts, § 428. That is the doctrine sought to be invoked in this case, as applicable to a director regarded as a trustee of the corporation. But the statement, however correct in its application to specific instances, must be taken with the limitations which belong to it. The foundation of the rule is that a fiduciary agent, owing a duty to his principal, cannot make a contract for his own benefit which is inconsistent with that duty. It is where there is a collision between trust duty and personal interest that the equitable prohibition applies. The cases usually cited to support the doctrine are where a trustee buys in the property of his principal at a sacrifice for his benefit, when, if he bought it at all, it was his duty to do it for his principal, or he makes a contract in behalf of his principal with himself, directly or indirectly, as the other party to the agreement, or where by some secret arrangement he makes a profit directly at the expense of his principal. The following cases are illustrative of the rule thus stated: *Bird C. & I. Co. v. Humes,* 157 Pa. St. 278; *Koehler v. Black River Falls I. Co.* 2 Black, 715; *Higgins v. Lansingh,* 154 Ill. 301; *Slade v. Van Vechten,* 11

Paige, 21. As before stated, the entire basis of the rule consists in the collision between trust duty and personal interest. Can it be said that any such conflict exists in the ordinary case of the purchase by a director in a going corporation of its outstanding obligations? This is the test to be applied to the facts stated in the complaint. It is nowhere stated whether the notes purchased by Syme were due or not. It is not claimed that any fund had been provided for the payment of these obligations. No special liquidation thereof had been ordered by the corporation. No fact or circumstance is alleged charging him with a present duty to act for the corporation which would make it inconsistent for him to make a personal purchase of these notes, save that he was an officer and director. On the contrary, it is alleged that the company was embarrassed and without funds to pay pressing demands,— not that it was insolvent, but hard up. There was no present duty resting upon Syme to extinguish the notes, so far as appears from the complaint. It is not charged that he neglected any duty he owed to the corporation in not securing funds for their discharge, or that he diverted any of its moneys properly applicable thereto to other purposes. The plaintiff's case rests upon the bald proposition that, being an officer, he could not purchase said notes at a discount. We are not prepared to accept this statement in its entirety. It is only in cases where the conflict of duty mentioned arises that the rule is received in its fullest application. Thus, in Morawetz, Priv. Corp. § 521, it is said: "So, an agent of a corporation may purchase claims against the company at a discount, and enforce them in full, if he is not under obligation to make the purchase on behalf of the corporation." The supreme court of Kansas approved this statement as the law in a case where the treasurer of a railroad company purchased its promissory notes at a discount, and he was allowed to enforce them at their full face value. *St. Louis,*

*Ft. S. & W. R. Co. v. Chenault,* 36 Kan. 51. In *Inglehart v. Thousand Island H. Co.* 32 Hun, 377, the law is stated thus: "So, also, a trustee or director may with his own money purchase for himself, of a third person, a valid and subsisting outstanding debt owing by the company, and secure a perfect title thereto. Such a transaction is not even the ground for entertaining the suspicion that it is in violation of any duty which he owes the corporation, and there is no presumption of law against its fairness. . . . The other question to be considered in this connection is, Will the trustee or director be permitted to enforce a collection of the debt thus acquired for its entire amount, or shall he be limited to the sum which he actually paid for the debt or obligation? I am unable to discover any good reason why he should not be permitted to enforce payment for the full amount, nor can I find any decision limiting the trustee to the sum actually paid." See *S. C.* 109 N. Y. 454. In *Bradly v. Marine & R. P. M. & M. Co.* 3 Hughes, 26, the syllabus reads as follows: "The president of a corporation may with his own means (the company being embarrassed and without funds to do so) purchase the past-due, outstanding bonds of the corporation, and hold the same as against the company." Perhaps the best-considered and most elaborate discussion of the question under consideration is found in *Seymour v. Spring Forest C. Asso.* 144 N. Y. 333, to which reference is made as supporting the conclusion here reached.

But we need not prolong the discussion. As we construe the complaint, it fails to show any breach of duty on the part of Mr. Syme for which he could be held liable in this action. But, should it be deemed otherwise, still we cannot see how this action can be maintained, if, as we have seen, plaintiff is not entitled to the collaterals mentioned. The notes given to Syme in renewal of the ones purchased are yet held by his heirs. In an action to enforce them, plaint-

iff would have a complete remedy for its grievances, if they were real, in defense of a recovery thereon. So far as appears by the complaint, the plaintiff has never been called upon to pay a cent on these notes, either interest or principal. Under the circumstances stated, the necessity of applying to a court of equity for relief is not apparent. See *Matteson v. Ellsworth*, 28 Wis. 254; *Miller v. Rouse*, 8 Minn. 124.

Another objection of some importance is urged. It is nowhere alleged when the corporation discovered the alleged shortcomings of Syme. Considerable time has elapsed since the alleged transactions took place, and since Syme's death. If they were voidable at the election of the corporation, the rule is that prompt action must be taken upon sufficient knowledge of the facts. *Seymour v. Spring Forest C. Asso.* 144 N. Y. 333. Delay must be excused when there is an appeal to equity.

What has been said renders it unnecessary to consider the question whether plaintiff's claim would be barred by failure to present a claim against the estate of Syme in the county court.

*By the Court.*— The order of the circuit court sustaining the demurrer is affirmed.

MARSHALL, J., dissents.