## MONROE v. SCOFIELD.

## In re GALLIC–VULCAN MINING CORPORATION.

### No. 2640.

Circuit Court of Appeals, Tenth Circuit.
April 22, 1943.

---

Philip S. Van Cise, of Denver, Colo. (Van Cise, Robinson & Charlton and Ken-neth W. Robinson, all of Denver, Colo., on the brief), for appellant.

Thomas K. Hudson, of Denver, Colo., for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

On December 23, 1941, the Gallic-Vulcan Company, a mining corporation, filed its petition in bankruptcy in the United States District Court for the District of Colorado. Among the liabilities listed were two claims by appellant, John K. Monroe: One, for $15,000, evidenced by a note and deed of trust to him on all real and personal property of the corporation, the other, a judgment against the corporation for $732.60 and interest. This judgment had been purchased by appellant from W. D. McClain, after the bankruptcy of the corporation, for $200. Appellant sought to establish both of these claims for their full amount as preferred claims. The referee found that appellant had agreed to furnish the $15,000 in consideration of 17,125 shares of stock which he was to receive from Claude H. Blakeslee, president of the corporation; that as an officer of the corporation he was in a fiduciary capacity and could therefore not profit by purchasing a claim against the corporation. Both claims were allowed as common claims. The $732.60 judgment claim was allowed only for $200, the amount which he had paid for it. The findings of the referee were affirmed by the District Court, and Monroe brings this appeal.

The applicable principles of law are clear and are not in dispute. It remains only to apply them to the facts. A director is an officer of a corporation. As such, he represents the corporation, and all of his dealings with the corporation will be carefully scrutinized. He will be held to the highest degree of honesty and the best of faith in all of his dealings with the corporation. But if such dealings are honest, above-board, and to the benefit of the corporation, there is no reason why they should not be valid and binding the same as transactions with a stranger.

According to the practically uniform opinions of the courts, a corporation may, although insolvent, secure an officer or stockholder for a contemporaneous loan made to it fairly and in good faith. The burden in such transactions is always on

the secured director or officer to show the good faith of the transaction. 13 Am.Jur., Corporations, § 1275; 19 C.J.S., Corporations, § 1391 b; Twin Lick Oil Co. v. Marbury, 91 U.S. 587, 23 L.Ed. 328.

What are the facts surrounding this transaction? The debtor was a mining corporation, possessed of mining claims which the stockholders and officers considered valuable. It had never been adequately financed so that its possibilities could be fully developed. From its organization in 1930 to December 15, 1941, one week before bankruptcy proceedings were filed, Claude Blakeslee was the president and general manager. The corporation was operated largely as a family corporation. In 1937, appellant purchased 7,000 shares of stock, for which he paid eighty cents per share. In 1939, Dr. H. A. Haefeli obtained a judgment against the corporation, upon which he levied execution, and the property was advertised for sale. Blakeslee came to Denver and importuned appellant to assist the corporation, stating that unless the sale was stopped, everything would be lost. Appellant personally borrowed $4,500, for which he was given the corporation's unsecured note, and paid off the judgment. At this time appellant was made a director. At various times thereafter he advanced money to the corporation in the total sum of $12,141.83. This was carried on the books as an open account, for which he held no security. This claim was allowed as a common claim and is not involved in this appeal. Appellant was elected treasurer of the corporation February 13, 1940. The company was anxious to erect a mill and procure other necessary equipment in order to develop the property, but had no funds or credit. In April, 1940, Blakeslee gave appellant a letter, stating that if he would assist in financing the erection of a mill building and other improvements, and furnish necessary funds to operate the property for ninety days, he, Blakeslee, would give him 17,125 shares of stock out of his personal holdings. This transaction was never consummated and the stock was never delivered.

In June, 1941, the corporation was again without funds, and heavily indebted. Monroe was busy at his profession as an architect and had no time to raise money. At this time it was agreed between appellant and the corporation that he should borrow $15,000 for the corporation, for which he was to receive its note, secured by a deed

of trust. He borrowed the money at the bank and gave as collateral security to his note, the note and trust deed from the corporation, and also assigned a fee which he had coming to him from his profession. The corporation got the full benefit of the $15,000. As a result of this loan, the mill was erected and equipped with necessary machinery. While no authority had been secured from the board of directors for the loan, the transaction was subsequently ratified by the stockholders, with full knowledge of the circumstances under which it was consummated.

Appellant has sustained by the undisputed evidence the burden of showing that he acted in the best of faith in this transaction. His sole motivating purpose in this transaction was to attempt to make a going concern of the corporation. They all believed they had a valuable property. Its value could not be established unless it could be put on its feet. To do this, it was necessary to build a mill and equip it with machinery. The corporation had no money and could borrow none. Appellant agreed to borrow the money and loan it to the corporation on its note, secured by a deed of trust. He could borrow this money only by putting up the trust deed as collateral security and also assign to the bank as additional security a personal fee which he had earned in his profession. All these things he did, for the sole benefit of the corporation. He could benefit personally only if this transaction resulted in a sound financial institution, and then only to the same extent that all the stockholders, as well as the creditors, would benefit.

The contention that he agreed to loan this money to the corporation in return for 17,125 shares of the personal stock of Blakeslee is not sustained by the record. The letter speaks for itself. It expressly provides that he was to receive this stock for his "assistance in financing the erection of a mill building and other improvements * * *", as well as other considerations on his part. Nowhere in the letter was it intimated that he was personally obligated to loan his own money for these improvements. This transaction was never consummated and was abandoned, as is evidenced by the fact that nearly a year later when this loan was considered, Blakeslee himself went to the bank with appellant to arrange the transaction by which the money could be secured, and, as president of the corporation, executed the note and

deed of trust which were delivered to Monroe.

This is not an attack, as it is urged, upon findings of fact by the referee made from conflicting evidence. As pointed out, there is no substantial dispute as to the facts. The appeal challenges the correctness of the legal conclusion of the referee that appellant, while in a fiduciary capacity, could not loan money to the corporation for its legitimate needs and take security therefor. This conclusion of the referee, affirmed by the trial court, as we have pointed out, is erroneous and constitutes reversible error.

We see no reason in equity why, in all fairness and good conscience, appellant should be deprived of his security for the loan fairly made to the corporation of funds that were sorely needed and which it could not obtain elsewhere, and which resulted in enhancement of assets and value of the property which would not exist had it not been for the loan.

Appellant further contends that he is entitled to a preferred claim for the full amount of the judgment which he purchased from McClain. He contends that he stands in the same position as McClain in regard to this judgment. Where a corporation is a going concern, a director may purchase a claim against the corporation at a discount and enforce it for the full amount, absent a present duty on his part to act for the corporation. However, where the corporation is insolvent, he is precluded from recovering more than he paid for the claim unless by an order of the court or otherwise he has been shorn of all power in the corporate management and his trust relationship has been fully terminated. 19 C.J.S., Corporations, § 800; In re McCrory Stores Corp., D.C., 12 F.Supp. 267.

It is not claimed that appellant was relieved of his position as a director by any court order and bankruptcy did not terminate his status as a director. 19 C.J.S., Corporations, § 735; Remington on Bankruptcy, Fourth Ed., § 537. He therefore is limited in his right of recovery to the $200 which he paid for this claim. The judgment in McClain's hands would entitle him to a preferred claim in bankruptcy. We perceive no reason why this status of the claim should be changed as to the amount appellant is entitled to recover thereon. The purchase of the claim by him was beneficial to the creditors of the corporation to the extent of the difference of the full judgment and the $200 he paid for it. He is entitled to a preferred claim for the $200 he paid for the judgment.

Reversed and remanded, with directions to enter judgment in conformity with the views expressed herein.