**In the Matter of U.S. TRUCK COMPANY, INC., a Michigan corporation, Debtor.**

**Bankruptcy No. 82–03561–W.**

United States Bankruptcy Court, E.D. Michigan, S.D.

Dec. 6, 1982.

Joseph S. Radom, Southfield, Mich., for debtor.

Gerry M. Miller and Matthew R. Robbins, Milwaukee, Wis., James P. Hoffa, Detroit, Mich., for Union.

Barbara J. Rom, Detroit, Mich., for Creditors' Committee.

## MEMORANDUM OPINION AND ORDER

GEORGE E. WOODS, Bankruptcy Judge.

On September 9, 1982, the Court denied the debtor's application to reject its collective bargaining contract with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Union). This matter is presently before the Court on the debtor's motion for reconsideration of the September 9, 1982 ruling.

The debtor filed for relief under Chapter 11 on June 18, 1982. On July 15, 1982, the debtor sought to reject its collective bargaining agreement with the Union.

Evidence presented at the hearings on September 1 and 9, 1982, indicated that the

debtor had been incurring serious losses. John Schroeder, the chief finance officer, testified that losses for 1981 totaled $602,-833.00, while losses for 1982 were projected at $1,300,000.00. Gerald Whitmore, debtor's chief operating officer, related at length as to actions taken by the debtor to curtail its losses, including the termination of dividends and executive bonuses; the closing of terminals in Cincinnati, Ohio, and Port Huron, Michigan; the sale of the intra-state authority between Ohio and Michigan. Mr. Whitmore additionally testified that the debtor had sought to curtail its losses by seeking a 20% wage reduction from the Union, but that the request had been rejected. Ostensibly, the reason for the rejection was the purchase of the debtor's stock by a third party, McKinley Transport, Inc. Finally, Mr. Whitmore ventured his opinion that the debtor would not survive if the collective bargaining contract with the Union could not be terminated and renegotiated.

The sole witness presented by the Union was Larry Delp, a business agent. Mr. Delp admitted that he was aware of the debtor's losses. However, he emphasized that the collective bargaining agreement at issue, the "Master Freight Agreement", is industrywide, that other companies covered under the agreement have suffered losses, and that the Union has consistently refused to give wage reduction concessions. Mr. Delp explained that it was the position of the Union that an employer in need of economic relief should approach the National Negotiating Committee for consideration of a 15% wage deferral plan, provided under the April 1982 labor contract.

The Court denied the debtor's motion to reject the contract, specifically finding that the debtor had failed to exhaust the remedies provided by the agreement between the parties.

On October 8, 1982, the debtor moved for reconsideration of the Court's decision. During oral argument, counsel for the debtor informed the Court that the debtor had unsuccessfully sought wage deferrals from the Union. The Court took the motion for reconsideration under advisement, subject to the Union's request for an evidentiary hearing.

The evidentiary hearing was held on November 16, 1982. The only witness was Larry Mason, vice president of corporate development for Central Cartage Company. Central Cartage Company supervises the affairs of the debtor. It is allegedly owned by the same enterprise which owns McKinley Transport, Inc. Mr. Mason testified that the debtor had recently closed its Ohio plant, resulting in substantial savings. He further testified that the Union had been making ongoing concessions to the debtor, including a two week "hold back" on wages covering 80 employees. Finally, Mr. Mason testified that he was aware of ongoing negotiations between the parties concerning wage deferrals, but that such negotiations had been unsuccessful. At the close of the hearing, the debtor renewed its motion for reconsideration.

The initial inquiry before the Court is whether § 365(a) of the Bankruptcy Code, allowing the rejection of executory contracts, authorizes the rejection of collective bargaining agreements. The Third Circuit, in *In Re Bildisco,* 682 F.2d 72 (3d Cir.1982), succinctly summarized the arguments in opposition to reading collective bargaining agreements into § 365:

This case places the statutory policies underlying Chapter 11 in tension with our national labor policy, as expressed in the National Labor Relations Act. Broadly stated, that policy is to promote industrial peace by facilitating collective bargaining. Sections 7 and 8 of the NLRA, 29 U.S.C. §§ 157 and 158, guarantee the rights of workers to organize and to bargain collectively and protect both employees and employers from unfair labor practices that undermine these rights. The specific statute relied on by the union and the Labor Board is § 8(d) of the NLRA, which provides that no party to a collective bargaining agreement may "terminate or modify" the agreement without following a specified procedure. Our task is to reconcile the apparent con-

flict between the NLRA and the Bankruptcy Code and the policies they represent.

682 F.2d at 77–78 (footnotes omitted). However, having recognized the tensions inherent in reconciling the bankruptcy and labor statutes, the Court concluded that, "Congress did not intend to distinguish collective bargaining agreements from executory contracts in general." 682 F.2d at 78. *See also, Shopmen's Local Union No. 455 v. Kevin Steel Products, Inc.,* 519 F.2d 698 (2d Cir.1975); *Brotherhood of Railway, Airline and Steamship Clerks v. REA Express, Inc.,* 523 F.2d·164 (2d Cir.1975), *cert. denied,* 423 U.S. 1017, 96 S.Ct. 451, 46 L.Ed.2d 388 (1975), 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 82 (1976); *Local Joint Executive Board v. Hotel Circle,* 613 F.2d 210 (9th Cir.1980); *In Re Allied Supermarkets, Inc.,* 6 B.R. 968 (D.C.E.D.Mich.1980). *Compare,* Note, *The Labor Bankruptcy Conflict: Rejection of a Debtor's Collective Bargaining Agreement,* 80 Mich.L.Rev. 134 (1981). Similarly, the present Court concludes that § 365(a) does in fact authorize rejection of collective bargaining agreements.

The second, and more difficult, inquiry concerns the appropriate legal standard for the rejection of collective bargaining agreements. The usual test for rejection of an executory contract is the business judgment test: whether rejection would benefit the estate. 2 *Collier on Bankruptcy* ¶ 365.03 (15th ed. 1981). Several courts have utilized the business judgment test, or one substantially similar, in allowing the rejection of collective bargaining agreements. *In Re Reserve Roofing Florida, Inc.,* 21 B.R. 96, 100 (Bkrtcy.M.D.Fla.1982), and cases cited therein. Nevertheless, this Court believes that a more stringent standard is mandated for the rejection of these agreements. "The impact of rejection of a collective bargaining agreement on the rights of workers and the favored status those rights have been awarded by Congress ... require a more stringent examination of the evidence offered to justify rejection of such a contract." *Bildisco,* 682 F.2d at 79.

The Second Circuit was the first to hold that greater scrutiny should precede rejection of a labor contract than rejection of an ordinary commercial contract. *Kevin Steel Products,* 519 F.2d at 707; *REA Express,* 523 F.2d at 169. In *Kevin Steel,* the Court held that rejection of a collective bargaining agreement requires " 'thorough scrutiny, and a careful balancing of the equities on both sides'." 519 F.2d at 707 *quoting, In Re Overseas National Airways, Inc.,* 238 F.Supp. 359, 361 (E.D.N.Y.1965). In *REA Express,* the Court, called upon to consider the rejection of a collective bargaining agreement subject to the provisions of the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.,* stated:

where, after careful weighing of all of the factors and equities involved, including the interests sought to be protected by the RLA, a district court concludes that an onerous and burdensome executory collective bargaining agreement will thwart efforts to save a failing carrier in bankruptcy from collapse, the court may under § 313(1) authorize rejection or disaffirmance of the agreement.

523 F.2d at 169.

Subsequent decisions, purporting to follow the rule of *Kevin Steel,* developed a two-pronged legal standard for determining the propriety of contract rejection. First, the Court must determine that the agreement is onerous and burdensome to the estate, so that failure to reject will make a successful reorganization impossible. Second, the equities must be balanced and found to favor the debtor. *In Re Alan Wood Steel Company,* 449 F.Supp. 165, 169 (E.D.Pa.1978), *appeal dismissed,* 595 F.2d 1211 (3d Cir.1979); *In Re David A. Rosow, Inc.,* 9 B.R. 190, 191 (Bkrtcy.D.Conn.1981); *Allied Supermarkets, Inc.,* 6 B.R. at 975.

The two-pronged test has not been universally accepted. The Third Circuit recently rejected decisions "which purport to follow the rule of *Kevin Steel* but instead replace its 'balancing of the equities' with a test predicating permission to reject on a showing 'that an onerous and burdensome executory collective bargaining agreement

will thwart efforts to save a failing carrier in bankruptcy from collapse.' (*REA Express,* 523 F.2d at 169)." *Bildisco,* 682 F.2d at 79. *See also, Reserve Roofing Florida,* 21 B.R. at 100. The *Bildisco* Court held that the appropriate standard is the "thorough scrutiny and careful balancing of the equities" test set forth in *Kevin Steel.* It based its holding on the following reasoning:

> We accept this formulation of the appropriate relationship between the competing statutory policies. It accommodates the statutory policies of the Labor Act by demanding a great evidentiary showing than for rejection of a typical executory contract, but it does not erect impossible barriers to rejection of labor contracts in violation of the policies underlying Chapter 11. It plots a middle course between the possible extremes, requiring a sensitive weighing of the competing private and public interests in the context of the particular case.

682 F.2d at 79.

The Sixth Circuit has yet to rule on the appropriate standard for rejection of a collective bargaining contract. This Court in any event need not decide between the conflicting standards as the present debtor has presented sufficient evidence to satisfy either test.

■ Under the first prong of the strict test, the debtor must show that reorganization is impossible absent rejection of the collective bargaining agreement. This does not mean, however, that the debtor is required to guarantee to the Bankruptcy Court that following its rejection of the contract its business will be successful. *Allied Supermarkets,* 6 B.R. at 979–980.

Testimony presented at the September 1 and 9, 1982 hearings established that the debtor is incurring staggering losses; that measures undertaken to reduce expenses have proven insufficient to reverse the loss trend; that the debtor cannot survive given the wage requirements of the collective bargaining contract currently in effect. The Court therefore finds that rejection of the labor contract is absolutely necessary to save the debtor from collapse.

Having determined that the debtor has shown the labor contract to be onerous and burdensome, the Court must proceed to balance the equities. The Third Circuit has set forth a number of factors to be weighed, including: (1) the consequences of a strike on the business, (2) the impact of a possible breach of contract claim by the union, (3) the adequacy of the relief available to the employees through the claims procedure, (4) the proportion of employees covered by the labor contract, (5) how the employees' wages and benefits compare to others in the industry, and (6) the good or bad faith of the parties in dealing with the effect of the company's insolvency on its labor obligations. *Bildisco,* 682 F.2d at 80, incl. n. 12.

■ Having reviewed the testimony, the Court finds that the equities and advantages to the debtor by rejection and the overall equities outweigh the disadvantages and losses to the Union and the employees represented by it. However much this Court is reluctant to intervene in collective bargaining agreements between parties, it believes that this particular debtor has made every effort to work out a feasible arrangement with the Union under the terms of the contract. Further, the Court recognizes that the agreement is national in scope, and that the debtor's competitors must pay wages comparable to those paid by the debtor. However, it is the view of the Court that the "proper standard must be based on the ultimate effect of the collective bargaining agreement on the debtor in possession". *Allied Supermarkets,* 6 B.R. at 978. Finally, the Court finds that should the rejected contract be renegotiated, the debtor has a reasonable chance of success, thereby alleviating the loss of jobs and intangible employee rights such as seniority, welfare and pension benefits. "While the national labor policy may favor the preservation of collective bargaining agreements, rejection of the collective bargaining agreement is to be preferred if the alternative is a liquidated, defunct operation leaving employees jobless." *In Re Handy Andy, Inc.,* 109 LRRM 3298, 3306 (N.D.Tex.1982).

The application of the debtor to reject its collective bargaining contract with the Union IS hereby GRANTED.

So ordered.