**In the Matter of U.S. TRUCK COMPANY, INC., a Michigan corporation, Debtor.**

**Bankruptcy No. 82–03561–BE.**

United States Bankruptcy Court, E.D. Michigan, S.D.

June 18, 1984.

Joseph Radom, Southfield, Mich., for debtor.

Barbara Rom, Ronald M. Baugh, Detroit, Mich., for Unsecured Creditors' Committee.

James Hoffa, Jr., Detroit, Mich., for Teamsters' Union.

## MEMORANDUM OPINION AND ORDER

STANLEY B. BERNSTEIN, Bankruptcy Judge.

*Introduction:*

The debtor moved for an order authorizing its affiliate, Brent Company, to pur-

chase undisputed and liquidated unsecured claims at forty (40%) percent of the allowed amounts. The motion was supported by the unsecured creditors' committee, but opposed by the Teamsters' Union.[1] After hearing oral arguments and considering the brief filed by the unsecured creditors committee, this Court denies the motion.

*Analysis:*

The debtor filed its Chapter 11 petition on June 18, 1982. This opinion marks the second anniversary of the filing. The continuing delay in this case is attributable to the debtor's inability or unwillingness to negotiate a new collective bargaining agreement with the Teamsters' Union. This Court's predecessor had authorized the rejection of the pre-petition collective bargaining agreement—*See In re U.S. Truck Co., Inc.,* 24 B.R. 853 (Bankr.E.D. Mich.1982); this Court later entered an order, as amended, directing both the debtor and the Teamsters' Union to reopen negotiations. The order compelling negotiations has been appealed, but not stayed.

This Court has also previously entered an order striking the debtor's plan because of an improper classification of claims; that order was appealed, but subsequently the appeal was dismissed. So at this juncture, there is no plan on file. This Court also stated on the record that no disclosure statement could be meaningfully considered unless the damages arising from the rejection of the collective bargaining agreement were determined or estimated— discovery is presently continuing to measure or estimate those damages under an outstanding scheduling order. In addition, the trustees of the Central States, Southeast and Southwest Areas Pension and Health and Welfare Funds have filed a contingent claim and supporting memorandum asserting a partial withdrawal liability under the Multiemployer Pension Plan Amendments Act of over $4,000,000. The resolution of this contingent claim is, in large measure, dependent on a new collec-

tive bargaining agreement and the rehiring of terminated employees.

The unsecured creditors of this estate are understandably frustrated by the delay in the debtor's effecting a plan of reorganization. The committee has, however, never moved to dismiss or convert the case, nor submitted its own plan. The committee is satisfied with a forty (40%) percent payment to unsecured creditors holding liquidated and uncontested unsecured claims. That satisfaction is apparently grounded in the committee's having reviewed an examiner's report and its accountants' report containing a liquidation analysis and projected cash flow analysis, and having assessed the probability of the debtor's effecting a plan.

The committee's brief, however, defeats its own position. The committee has what it believes is adequate information from reports it has received and its close familiarity with the proceedings in this case for concluding that a forty (40%) percent offer should be accepted. Adequate information is the rub in this case.

For all practical purposes, a forty (40%) purchase is the treatment the unsecured creditors with allowed claims would receive under a plan filed by Brent Company. The pre-petition unsecured creditors would be paid 40% on their claims, and they would write off the other 60%. What Brent Company does with the assignments of claims is of no interest to this class of creditors.

In effect, the debtor is seeking to short-circuit the reorganization process and effect a plan with a single class of creditors without prior approval of a disclosure statement or confirmation of a plan by this Court. That simply cannot be done under the Code.

One of the principal reforms under the Code was to assure a class of creditors, most especially unsecured creditors, that its members would receive adequate information for making a prudent business

---

1. "Teamsters' Union," as used in this opinion, refers to the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Teamster locals involved in this case include Locals 164, 299, 332, 339, 406, 486, 580 and 614.

judgment on whether or not to discount their allowed claims.

Section 1125 of the Code provided for that critical stage by means of a disclosure statement first reviewed and approved by the Court, after notice to creditors, before creditors could be solicited. So significant was this stage that the legislative spokesman for the Code referred to the disclosure statement as the very "heart of the consolidation of the various reorganization chapters found in" the prior Bankruptcy Act.[2] The comment to the Bankruptcy Code, Collier Pamphlet Edition called the hearing on approval of the proposed disclosure statement "probably the major procedural hearing in the Chapter 11 case."[3] The comment continued: "Thus, while dispensing with court approval of a plan, the Code requires that holders of claims and interests receive financial information as would permit them to make their own independent and informed judgment on whether or not to accept or reject the plan..."

This has all become so commonplace by now that one may be fairly astonished at the joint indifference to the process by the debtor and the creditors' committee. Of course, the committee already has most of the information its members deem is adequate, but presumably the committee does not deem presentation of that same information as relevant or necessary to individual creditors who are not members of the committee.[4]

Just how will an individual creditor be able to assess by his own lights whether a 40% payment is more or less than the dividend in liquidation, or whether that such payment is offered in good faith or is a fair and equitable treatment? That compound question can only be answered by an approved disclosure statement and confirmed plan.

The Teamsters' Union in its objection to the debtor's motion has voiced its apprehension that the proposed purchases of claims by an affiliate is part of a strategy to relieve the pressure upon the debtor to negotiate in good faith for a new collective bargaining agreement. The Teamsters' Union is also apprehensive that all kinds of misinformation will be communicated to its own members who will be urged to accept a 40% payment of their pre-petition allowed claims. Of course, Brent Company is not proposing to purchase the unsecured claims based upon rejection of the prior collective bargaining agreement because those claims are at present unliquidated.

The debtor and the creditors' committee have sought to beg this question by relying upon Bankruptcy Rule 3001. That rule does establish procedures for post-petition transfers both before and after proofs of claim are filed. One of the concerns is that the transfers be unconditional, and that the evidence of the terms of the transfer be filed by the transferee. The rule establishes a procedure for verifying the terms of the transfer.

At bottom in Rule 3001 is a larger concern to deter the "evils" of trafficking in claims by "insiders." To identify those evils, one has to study the cases construing the relevant sections of the Bankruptcy Act and old Bankruptcy Rule 207.

Having reviewed all of the cases cited by the creditors' committee concerning objections to transferred claims, this Court is satisfied that they bear no relevance to the circumstances of this case. Those cases largely turn on purchases of a few claims by insiders, not a wholesale purchase of an entire class of unsecured claims.[5] The

---

**2.** Comment to § 1125, Bankruptcy Code, Collier Pamphlet Edition 430 (1981).

**3.** H.R.Report No. 95–595, 95th Cong., 1st Sess. 408 (1977), U.S.Code Cong. & Admin.News 1978, 5787, *reprinted in,* Legislative History to § 1125, Bankruptcy Code, Collier Pamphlet Edition (1981).

**4.** One is reminded of Robert Michaels' "Iron Law of Oligarchy" derived from his classic study of the degeneration to tyranny of the leadership cadres of democratic political parties.

**5.** The leading cases are *In re Latham Lithographic Corporation,* 107 F.2d 749 (2d Cir.1939) and *Monroe v. Scofield, (In re Gallic-Vulcan Mining Corp.),* 135 F.2d 725 (10th Cir.1943). In *Latham, supra,* the court addressed the "evil" of rigged elections of a liquidating trustee. Com-

debtor's motion is but a masquerade. Bankruptcy Rule 3001 does not apply; 11 U.S.C. § 1125 does.

The debtor's motion is DENIED.

IT IS SO ORDERED.

menting on proper construction of Section 44 of the Bankruptcy Act of 1898, as amended, the Court stated: "The purpose of the provision under discussion is to prevent the election of a trustee who may be too friendly to the bankrupt and fail to project the interests of creditors." 107 F.2d 749, 750. The method of deterrence was to prohibit officers or directors from voting their claims for a trustee. In this case, the objection was to disqualify from voting a person who had taken a partial assignment of a claim. The court found on a narrow ground that the claim was based upon a partial assignment of a beneficial interest in a deficiency amount owed to a trust mortgagee. Only the trustee had standing to vote the claim for the entire deficiency.

In *Monroe, supra,* the court overturned the bankruptcy referee's disallowance of a claim as secured held by a director of the bankruptcy corporation. The court held that the referee's disallowance was clearly erroneous when there was no showing that the loan transaction was not "honest, above-board, and to the benefit of the corporation," 135 F.2d 725, 726. The court also sustained the bankruptcy referee's reduction of a claim to the amount paid for a post-petition transfer to this same director on the theory that "where the corporation is insolvent, [a director] is precluded from recovering more than he paid for the claim unless by an order of the court or otherwise he has been shorn of all power in the corporate management and his trust relationship has been fully terminated," 135 F.2d 725, 728. In instance the director remained unshorn. The court did, however, reverse the bankruptcy referee's reduction of this amount from a preferred to common (unsecured) claim. The claim was based upon a pre-petition judgment and there was no ground for reducing the status of the claim.

Clearly neither of these cases speaks to the conditions to an insider's purchasing a class of claims in a reorganization case. Disclosure is addressed to different evils.