**In re UVAS FARMING CORPORATION, Debtor.**

**No. 11–87–01667 R L.**

United States Bankruptcy Court, D. New Mexico.

Sept. 8, 1988.

---

Ella J. Fenoglio, Albuquerque, N.M. for UVAS Farming Corp.

William Davis, Albuquerque, N.M. for Laviana Investments.

## MEMORANDUM OPINION

STEWART ROSE, Chief Judge.

THE MATTERS before the Court in this Chapter 11 proceeding are the debtor's objections to the claims held or controlled by the Delaloye Group. The creditor's committee joins in the debtor's objections.

Since the filing of the petition, it has become apparent from the pleadings, proceedings, and testimony that underlying the reorganization of the debtor is a struggle for control of the corporation between two shareholder groups. Each group has filed disclosure statements and plans. By Court order, the plans were brought on for simultaneous confirmation. After the hearing on this matter, the debtor's third amended plan, backed by the majority shareholder group, was confirmed.

## FACTS

In reaching its decision, the Court has relied on not only the three days of testimony and argument presented, but also upon the pleadings, testimony and the record in prior and related proceedings. This the Court may properly do. *In re Missionary Baptist Foundation of America,* 712 F.2d 206, 211 (5th Cir.1983). The Court makes these following ultimate findings:

The debtor, UVAS Farming Corporation, is in the winemaking business near Deming, New Mexico. UVAS was established by the Vuignier family of Geneva, Switzerland in 1982. Despite capital infusions by way of equity investors and debt financing, the winery suffered cash shortages and filed its Chapter 11 petition on August 10, 1987.

At the time of filing, the majority shareholders were dominated by the Vuignier family. The minority shareholders were Laviana Investments, N.V., a Netherlands Antilles corporation, Lodico, S.A., a Swiss corporation, Jean–Pierre Delaloye, a Swiss investment advisor, and his clients, the Swiss corporations Amarone Investments, N.V., Jaremko Investments, Vespara Trading Corporation and Lipovan Investments, N.V. Laviana and Lodico were controlled

and represented by the Merkt law firm of Geneva.

After the petition was filed, Delaloye and his clients Amarone, Jaremko, Vespara and Lipovan bought up the interests, claims and shares of Laviana and Lodico. The Merkt law firm ceased its involvement. These transfers were accomplished under the assignment agreement of August 17, 1987. As illustrated by the statement of Transfer of Interest filed April 6, 1988, the Delaloye Group thereby came into being.

The interests acquired under the August 17, 1987 agreement by the Delaloye Group are as follows: 1,345 Class A shares in the debtor, 6,666 Class B shares in the debtor, a note and mortgage payable to Lodico from the debtor, shareholder loans payable to Lodico from the debtor, 100% of Laviana (and thus its UVAS stock and shareholder loans) and a 50% interest in New Mexico Vineyards, Inc. New Mexico Vineyards already owned a note originally made by the debtor to Sunwest Bank. This note is not the subject of a writedown.

The Delaloye Group now owned 100% of New Mexico Vineyards, Inc. New Mexico Vineyards then acquired, post-petition, the following interests, payable by the debtor to First New Mexico Bank: a note in the amount of $659,663.50, a second note in the amount of $36,000.00, an overdraft claim for $6,114.20, and deficiency claims for $3,465.15 and $1,607.56.

At a February 28, 1986 meeting of shareholders, all five then current members of the board of directors of UVAS were reelected. The shareholders then attempted to elect a new board member, Jean–Pierre Delaloye. However, the bylaws of UVAS limited the board to five members. The Delaloye election was invalid. The shareholders recognized the error and at the September 19, 1986 meeting of shareholders, the bylaws were amended and Mr. Delaloye was elected to the board.

The debtor, contending that Mr. Delaloye was a director of UVAS at the times that his group acquired its claims, seeks to write down the claims to the amount actually paid.

## DISCUSSION

### A.  Write Down

The United States Supreme Court has held that though a fiduciary may purchase claims against a solvent corporation, "the lower federal courts seem equally agreed that he cannot purchase after judicial proceedings for the relief of a debtor are expected or have begun." *Manufacturers Trust Co., Trustees v. Becker,* 338 U.S. 304, 314, 70 S.Ct. 127, 133, 94 L.Ed. 107 (1949). The tenth circuit earlier adopted this rule by holding that a director of a corporation may not, after insolvency, purchase claims against the corporation and enforce them for the face amount. He may only recover what he actually paid for the claims. Only a director whose trust relationship has been ended by the Court or otherwise may collect the face amount of his claim. *Monroe v. Scofield,* 135 F.2d 725, 728 (10th Cir.1943).

The Court perceives the applicable law to be that officers, directors, their attorneys and other insiders have fiduciary duties to various other persons and entities involved in a reorganization. The classic duty is the duty of a director, while he is a director, to pursue reorganization for the benefit of creditors and to reconstitute the corporation. It seems that the duty is to the corporation and its creditors. It is not to other shareholders. Therein lies the potential conflict. If a director purchases a claim against the corporation with the potential effect of destroying it and scuttling reorganization, thereby defeating the rights of unsecured creditors, then he should be denied the fruits of the transaction. Applied to this case, it means that when a director purchases a claim against the corporation, he should be entitled to recover on that claim only to the extent he paid for it.

The petition was filed prior to the times the Delaloye Group acquired the claims. Insolvency of the corporation is established. The law is clear that if Mr. Delaloye was a director of the debtor when his group acquired the claims, then the claims

must be written down to the amounts actually paid.

### B. Director

■ Delaloye contends that he was not and is not a director of UVAS. The Court finds his arguments unpersuasive.

The best evidence of Delaloye's director status is found in the minutes of the September 19, 1986 shareholder meeting. Mr. Delaloye's attorneys most ably represented their client at the meeting by orchestrating his election to the board as well as amending the by-laws to allow for more directors. Mr. Delaloye and his attorneys cannot now argue that he was never a director.

Even if the amended by-law was not ratified by the new board, the existing by-laws provided for up to five directors. The shareholders that day only elected five. The transcript shows that Mr. Delaloye was unanimously elected by the shareholders.

The corporation's secretary never reported these changes to the State Corporation Commission. This is irrelevant when compared to the unanimous election of Mr. Delaloye and unanimous shareholder agreement to change the by-laws. Mr. Delaloye was skillfully placed into a position in control at UVAS as a director. He cannot now claim otherwise. Any legal inadequacy in the amendment to the by-laws did not in fact diminish Mr. Delaloye's capacity to act as a director, and he did in fact act as a director.

As a director, Mr. Delaloye expressed his dissatisfaction with management and on behalf of the corporation, urged changes in management, changes in financial structure and numerous other endeavors. Sometimes he was out-voted, other times he was not.

Mr. Delaloye was a director when he and his associates acquired claims against the debtor. In fact, he is still a director to this day. The claims must be written down, the question remaining is how much.

### C. Treatment of Claims
#### 1. First New Mexico Bank Claims

The Delaloye Group, through New Mexico Vineyards, Inc., first claims $922,350.71 on the $659,663.50 note. The note and mortgage were purchased from the bank for $755,000.00. This claim shall be written down to $755,000.00 as of the date payment was made to the bank and shall bear interest thereafter at the contract rate. The Court will at a later date determine if the default rate is appropriate. The fees awarded by the state court in the foreclosure action of the mortgage shall be paid in full.

Secondly, the Delaloye Group claims a promissory note, deficiency claims and overdraft claims in the total face amount of $63,477.00. The Group paid $40,000.00 for the claims. They shall be written down to $40,000.00 and shall bear interest at the applicable contract rates from the date of purchase. Fees awarded by the state court shall be paid in full.

#### 2. Claims Acquired August 17, 1987

■ As earlier stated, under the August 17, 1987 transaction, Laviana bought Lodico's UVAS stock, shareholder loans, and the Lodico note and mortgage. The Delaloye Group then bought Laviana and the New Mexico Vineyards, Inc. stock. The Delaloye Group purchased all of these assets for $1,125,000.00, and therefore can receive no more than that. The problem is one of allocation. The Delaloye Group must concede that if Mr. Delaloye is a director, then the claim, that is, the Lodico note and mortgage, can be written down to $1,125,000.00. But the group bought more than the note with its money. It also bought stock and vineyards.

■ The August 17 transaction is one in which certain shareholders sold out to other shareholders. A director, along with other equity security participants, has a fiduciary duty to a corporation in reorganization. But the director has no such duty, *per se*, to competing shareholder groups who seek to reorganize on their own terms. There is thus no basis to impose upon the Delaloye Group a fiduciary duty to the other shareholders arising out of the transaction.

What duty did the Delaloye Group owe to other shareholders? Under Article 6, Section 3 of the by-laws of UVAS, transfers of stock are restricted. A seller must notify the corporation of the terms of the proposed sale. The corporation, and then other shareholders, have a right of first refusal at the stated price. Lodico and Merkt, by certified letter of August 20, 1987, to the secretary of UVAS, notified UVAS that 6,666 Class B and 1,345 Class A shares would be sold to Laviana for a total of $824,996.80. Neither UVAS or any other shareholders exercised their rights. The Delaloye Group, through Laviana, acquired the shares.

The duty to offer shares at the stated price is imposed by the by-laws and must bind all shareholders. This duty must be applied to the Delaloye Group as a purchaser of stock. Mr. Delaloye and his associates were existing shareholders. They knew of the obligations and should not be heard to contend that they were not bound in their transactions in corporate stock with respect to those obligations.

This duty can be enforced by an equitable remedy. An equitable remedy seems particularly appropriate under circumstances in which all the participants in the reorganization should be afforded an opportunity to reorganize.

It seems clear and unequivocal that the Delaloye Group blatantly, obviously, intentionally and for the purpose of pursuit of its goals of first, liquidation and second, reorganization on its terms, misstated the price by which the stock of UVAS belonging to Lodico was to be acquired. The appropriate remedy under such circumstances is not equitable subordination, but simply a writedown based on the principals of estoppel.

The Court will not now hear the Delaloye Group contend that it did not pay, out of its $1,125,000.00, the sum of $824,966.80 for the shares of stock acquired. The $300,003.20 left is the value of the remaining assets purchased by the Delaloye Group. The parties have agreed that the shareholder loans and vineyard acquired by the Delaloye Group should be assigned no value.

The New Mexico Vineyard note, originally held by Sunwest Bank, and not a subject of this claims objection motion has been assigned a value of $100,000.00 by the parties. The Lodico note and mortgage will thus be written down to $200,003.20 and shall bear interest at the contract rate from the date of transfer.

### D. Effect of Write Down

The reorganization of UVAS has three possible outcomes. Either the majority plan, already confirmed, will withstand appellate review, the minority plan will ultimately prevail, or lastly, neither will prevail. The parties were asked to argue this matter in light of the affect it has on each proposed plan. The Court is satisfied that this decision on write down is the same for each plan. But, a decision on write down may well be different in the event of a liquidation or some alternative plan.

### CONCLUSION

The claims acquired by the Delaloye Group post-petition must be written down to the amount actually paid. This memorandum opinion constitutes the Court's Findings of Fact and Conclusions of Law. Counsel for the debtor shall submit an appropriate form of order.